**Dallas Nathan HAMRICK, Petitioner,**

v.

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. 1352–W.**

United States District Court
N. D. West Virginia,
at Wheeling.
July 16, 1964.

E. Douglas McKay, Wheeling, W. Va. (court appointed), for petitioner.

George H. Mitchell, Asst. Atty. Gen., for respondent.

PAUL, District Judge.

From the petition, its exhibits, the return to the writ, and the evidence adduced at the plenary hearing held herein, the following facts are found:

Upon his plea of guilty, the petitioner was convicted of malicious and felonious wounding, in the Circuit Court of Mingo County, West Virginia, September 23, 1957. He was sentenced to the statutory indeterminate term of 2 to 10 years, but, on January 28, 1958, the execution of this sentence was suspended and petitioner was placed on probation for a period of 5 years.

On or about November 15, 1958, the petitioner was arrested in Greenbrier County, West Virginia, on a charge of driving while intoxicated. He was tried before a Justice of the Peace and found guilty, and sentenced to 60 days in jail. Petitioner was also under suspicion in Greenbrier County on breaking and entering or larceny charges. Late in December, 1958, the Sheriff of Greenbrier County called the Probation Officer of the sentencing court and informed him of the situation. The Probation Officer of Mingo County then discussed the situation with the Judge and the Judge ordered the petitioner's probation revoked and directed his Probation Officer to drive to Greenbrier County, pick up the petitioner, and take him directly to the West Virginia Penitentiary, at Moundsville, to start the service of his sentence. The Probation Officer complied and petitioner is now held under the sentence.

As far as the records in this case disclose, no petition for the revocation of probation was filed, and no warrant for petitioner's arrest was issued. It is certain that the petitioner was never brought before the Circuit Court of Mingo County on a probation violation charge, and no hearing was ever granted him. The only entry on the court records with regard to the probation revocation is an undated paragraph, which was added to the September 23, 1957, judgment of conviction and commitment, in the following language: "Dallas Nathan Hamrick's probation, which he was granted January 28, 1958 after the Probation Officer requested on September 23, 1957 that the investigation be extended to that date, is being revoked due to his violation of probation for failure to comply with the condition 'Shall not go in or around beer gardens or drink beer or whiskey or have it on his person.'" The Probation Officer testified, by stipulation, that when he called to the attention of the Judge the petitioner's situation in Greenbrier County and the court directed him to pick up the petitioner and transport him to Moundsville, the Judge said that he "(t)hought it irregular", but, in the interest of keeping down expenses, entered the order revoking the probation of petitioner.

The respondent's return to the writ attempts to explain or excuse the "irregular" procedure by claiming that petitioner had requested it. However, no admissible evidence was offered on this point although this court extended to the respondent further time to produce such evidence.

West Virginia Code 62–12–10 (Michie's Code, § 6291(17)) provides as follows:

"If at any time during the period of probation there shall be reasonable cause to believe that the probationer has violated any of the conditions of his probation, the pro-

bation officer may arrest him with or without an order or warrant, or the court which placed him on probation, or the judge thereof in vacation, may issue an order for his arrest, whereupon he shall be brought before the court, or the judge thereof in vacation, for a prompt and summary hearing."

This state of facts presents to this court the issue of whether or not any of the petitioner's rights under the United States Constitution have been violated.

■ Absent any State statute requiring that a hearing be accorded a probationer before his probation is revoked, it seems clear that the Constitution requires no such hearing. In Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935) the court, while pointing out that a Federal statute required a probation revocation hearing for Federal probationers, also pointed out that no constitutional right is involved and that probation or suspension of sentence comes as an act of grace to one convicted of a crime. The convicted person has already had his day in court, and probation is simply one of the devices of an enlightened system of penology which has for its purpose the reclamation and rehabilitation of the criminal. To encumber the use of this device by constitutional requirements applicable to the trial of one accused (but not convicted) of crime would simply inhibit the courts' beneficence in this regard. Similar expressions of the constitutional aspects of probation revocation are found in Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932) and Bennett v. United States, 158 F.2d 412 (8 Cir. 1946).

Several of the States have no statutory provisions granting a right to a hear-

ing. With the single exception of Fleenor v. Hammond, 116 F.2d 982, 132 A.L.R. 1241 (6 Cir. 1941), which involved executive revocation of a conditional pardon without a hearing, no case has been found holding that the absence of such statutory provision, or a revocation without a hearing, infringes the due process clause of the Federal Constitution. The Fleenor opinion has been severely criticized, particularly because it quoted a sentence from Escoe out of context in support of its rationale when the Escoe opinion was diametrically opposed to the result in Fleenor. See 29 A.L.R.2d 1074, Section 3, at p. 1081.

■ It is, of course, a corollary to the proposition that due process does not require a probation revocation hearing that, if a hearing is held, it need not be conducted with the due process attributes of a criminal trial under our accusatory system. See, e. g., Burns v. United States, supra; United States v. Coles, 88 F.Supp. 150 (D.C.Or.1949); and Kelley v. United States, 235 F.2d 44 (4 Cir. 1956). While some of the federal cases may indicate that certain fundamental rights, such as the right to representation by counsel, are necessary to proper procedure in Federal courts, it would seem that such admonitions are simply an exercise of the supervisory powers of the higher Federal courts and do not predicate assimilation of a probation revocation hearing to a criminal trial, as far as constitutional rights are concerned.[1] It is readily apparent that inculcating into probation (and for that matter, parole) hearings procedures constitutionally made necessary in Federal criminal trials by the Fifth and Sixth Amendments, and in State trials by the Fourteenth, would materially alter traditional procedures used and found use-

---

1. See, however, the short "per curiam" in United States ex rel. Frinks v. Barwick, 331 F.2d 597 (4 Cir. 1964). By implication, this case might hold that a right to counsel, in State probation revocation hearings is constitutionally prescribed. Because the point is not discussed and the facts and circumstances are by no means

clear, one would hesitate to assume such a departure from prior law. The departure would be particularly onerous if it were applied to the administrative hearings before state parole boards. No logical reason for distinction between probation revocation and parole revocation is apparent.

ful in the effective administration of these humanitarian measures. Investigative reports of probation and parole officers would no longer be admissible; confrontation of and demeanor testimony by witnesses would be required; even charge by indictment and trial by jury might be entailed. Faced with these impediments, judges and parole boards would be hesitant, indeed, to grant conditional releases. Neither the interests of the convicted person nor those of the public would be served.

■■ The holding that the due process provision of the Fourteenth Amendment does not require that a State provide a hearing in probation revocation proceedings, does not, however, dispose of the constitutional aspects of this case. While a mere mistake in State law, or in the application of State-provided procedures, ordinarily are insufficient to invoke a Federal court's jurisdiction in habeas corpus to protect constitutional rights,[2] here we have no mere mistaken application of State law. Here we have a knowing and intentional denial to this petitioner of a right granted to him, and to all similarly situated, by the West Virginia statute. Undoubtedly, the judge saved himself time and trouble and the State money by directing that the petitioner be taken directly to prison from the Greenbrier County jail, without the detour which would have been necessary if he had been brought to Mingo County for a proper hearing. This saving in time, trouble and expense was effected only by the discriminatory deprivation of a right extended to the petitioner by statute. As such, the State court's action deprived petitioner of the "equal protection" of the State law, a right guaranteed to him by the appropriate provision of the Fourteenth Amendment.

■ While the Equal Protection Clause had its origin, and still has its principal application, in the invidious discriminations as to class or race, its reach is not so limited. Individuals deprived of important rights by discriminatory State action can also claim its protection. See, e. g., Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); Moss v. Hornig, 314 F.2d 89 (2 Cir. 1963); Williams v. Kansas City, Missouri, 104 F.Supp. 848 (D.C. Mo.1952), affirmed 205 F.2d 47 (8 Cir. 1953). The conclusion is inescapable that the attempted revocation of probation and the commitment based thereon are void.

■■ There remains the question of what may or should be done under the circumstances. Ordinarily, it would be proper to order release, conditioned upon the State's providing the petitioner with the hearing which was denied him. Since the probation revocation order and the commitment must be declared void *ab initio*, the petitioner has remained in the position of a probationer, and, his probationary period having expired, and since no formal charge of probation violation was filed and no warrant was issued therefor during the probationary period, he is entitled to his freedom from confinement, and even from supervision. An order of release may be entered and served, but the execution of the order may be stayed for a period of 10 days after it is served upon respondent, within which time the State, on respondent's behalf, may file its notice of appeal and seek further stay for the purpose thereof.

2. See, e.g., Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1949); Hughes v. Heinze, 268 F.2d 864 (9 Cir. 1959).