[Crim. No. 3842. Third Dist. Jan. 6, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM A. RICCI, Defendant and Appellant

234

William A. Ricci, in pro. per., and George A. Lagomarsino, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—This is an appeal from a judgment of burglary conviction. Defendant was tried before a jury.

About 10 p.m. October 7, 1964, the burglar alarm at the Shasta Laundry sounded. William McBride, the night watchman, went to the roof of the building to await arrival of the police. When the police arrived McBride tossed the keys of the building to them and reentered the building. He was walking down a hallway when he saw defendant, who was carrying a flashlight. McBride identified himself as the watchman and defendant turned and ran. McBride talked to the police, who searched the building and the roof. Searching the roof, Officer Link of the Sacramento Police Department found a bag of tools and a pair of gloves. Searching further, he found defendant in a water tank. The officer testified that he looked into the tank and saw defendant's face "sticking up out of the water." Officer Link took defendant into custody and brought him into the building. He testified that when McBride, the night watchman, saw defendant he stated: "That's the man I saw in the hallway" and that defendant made no reply to that statement.

When defendant was brought to the squad car, Officer Link placed the tools on the floor of the car. He told defendant "I found your tools on the roof." Defendant replied, "Yes, they are mine. I bought them at Sears today."

Defendant was taken to the police station, where he was booked. Twice the next day, October 8, he was interviewed by Detective Sergeant Mihanovich. On each of these occasions Mihanovich informed defendant of his right to remain silent and his right to counsel. During the second interview defendant signed a statement acknowledging that he had been advised of these rights. On the morning of October 9 defendant made an oral confession but refused to sign a written confession. At the trial Sergeant Mihanovich testified to the confession. The other prosecution witnesses were McBride, the night watchman, who made a courtroom identification of defendant, and Officer Link.

Defendant took the stand to testify that a friend's mother living in the vicinity had been bothered by prowlers so he went on the roof of the laundry to watch for prowlers. He denied being in the building. He denied making any confession to the detective sergeant. He denied any criminal intent. He also denied admitting that the tools were his.

■ Defendant first claims error in the admission of Officer Link's testimony that following defendant's arrest, McBride, the night watchman, had identified defendant as the man he had seen in the hallway and that defendant had failed to deny it. The theory is that defendant had not then been advised of his right to silence and to legal counsel, as required by *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; that, had such advice been given, the jury could have inferred that his silence resulted from insistence on his rights rather than consciousness of guilt.

Evidence of McBride's extrajudicial identification of defendant was admissible for the purpose of corroborating McBride's identification testimony and as independent evidence of guilt. (*People* v. *Gould,* 54 Cal.2d 621, 626 [7 Cal. Rptr. 273, 354 P.2d 865].) The identification had a dual character however. Because it implicated defendant in an unauthorized entry into the building, it was an accusatory statement as well as an identification. Officer Link was permitted to describe defendant's failure to respond to the statement. The state Supreme Court has recently held that an adverse inference cannot be drawn from the silence of an arrested man in the face of an accusatory statement; that the accusatory statement and the defendant's response are inadmissible in evidence; that article VI, section 4½ of the state Constitution applies to such an error and automatic

reversal is not required. (*People* v. *Cockrell,* 63 Cal.2d 659, 669-670 [47 Cal.Rptr. 788, 408 P.2d 116].)

In view of the rule of multiple admissibility, there was no error in admitting evidence of McBride's extrajudicial identification. Evidence of defendant's silence gave it a secondary character as an implied admission, thus creating error. The error was not prejudicial, however. We have reviewed the record and find that the other evidence of defendant's guilt (which included his valid confession) was complete and convincing. There is no reasonable possibility and no reasonable probability of a result more favorable to defendant in the absence of the error, hence no miscarriage of justice occurred. (*People* v. *Cotter,* 63 Cal.2d 386, 398 [46 Cal.Rptr. 622, 405 P.2d 862].)

■ Defendant contends that evidence of his extrajudicial statement admitting ownership of the tools violated the admissibility standards fixed in the *Dorado* case. Defendant's statement was not produced by a process of police interrogation designed to elicit incriminating statements. The officer did not even ask defendant a question but remarked, "I found your tools on the roof." The officer's statement was a routine observation which defendant could ignore, deny or explain. Defendant's reply was admissible under the rule announced in such cases as *People* v. *Cotter, supra,* 63 Cal.2d at pp. 393-394, and *United States* v. *Konigsberg,* 336 F.2d 844, 853.

■ Comment should be made on one other phase of the trial. The amended information charged defendant with three prior felony convictions which he admitted. In view of this admission, Penal Code section 1025 precluded any reference to these prior convictions unless defendant chose to take the stand and subject himself to impeachment. (See *People* v. *Stinson,* 214 Cal.App.2d 476, 480-481 [29 Cal.Rptr. 695].) Nevertheless, when Detective Sergeant Mihanovich was on the stand discussing the voluntariness of defendant's confession, he gratuitously referred to defendant's parole officer. Thus the jury knew that defendant was an ex-convict. Defendant's trial counsel did not object and made no request for an admonition to the jury. Sergeant Mihanovich's statement appears to have been accidental. Any possible prejudice was eliminated. when defendant voluntarily took the stand and was impeached by evidence of the prior felony convictions. Such gratuitous references by police officers may damage an otherwise sound prosecution. When prior convictions

are admitted, an alert prosecutor will avoid such potential damage by cautioning his witnesses against such references.

Judgment affirmed.

Pierce, P. J., and Good, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 2, 1966.

---

*Assigned by the Chairman of the Judicial Council.