**Howard B. LEVY, Petitioner,**

v.

**Jacob J. PARKER, as Warden, United States Penitentiary, Lewisburg, Pennsylvania, and Stanley R. Resor, as Secretary of the Army, Respondents.**

**No. 1057.**

United States District Court,
M. D. Pennsylvania.

Aug. 21, 1970.

Charles Morgan, Jr., Atlanta, Ga., for petitioner.

Michael A. Katz, Captain, JAGC, Office of The Judge Advocate General, Department of the Army, Washington, D. C., for respondents.

SHERIDAN, Chief Judge.

In this habeas corpus action petitioner has filed motions to require disclosure of information obtained by eavesdropping, and for an order requiring respondents to produce and permit inspection of certain documents.

On June 2, 1967, while on active duty with the United States Army, petitioner was convicted of several violations of the Uniform Code of Military Justice, 10 U.S.C.A. § 801 et seq.[1] The court-mar-

---

I. The violations can be summarized as follows:

Charge I. Article 90—Willful disobedience of a lawful order to establish and operate a Phase II Training Program for Special Forces Aidmen in dermatology.

Charge II. Article 134—Public uttering of statements, to enlisted personnel, which were disloyal to the United

tial returned a finding of guilty of a lesser included offense in Additional Charges II and III by substituting in the specifications to both charges "culpable negligence" for "intent to impair and interfere with the performance of duty of a member of the military forces of the United States."

Prior to the imposition of sentence on Charges I and II and Additional Charge I, Additional Charges II and III were dismissed on motion of the Government because the findings were tantamount to findings of not guilty on those charges. On June 3, 1967, petitioner was sentenced, to be dismissed from the service, to forfeit all pay and allowances and to be confined at hard labor for three years. Petitioner exhausted military appellate review procedures, but the conviction and sentence were approved. Petitioner was confined to the United States Disciplinary Barracks, Fort Leavenworth, Kansas, and in February 1969, was transferred to the United States Penitentiary, Lewisburg, Pennsylvania. The petition for habeas

corpus was filed on April 19, 1969. Petitioner is currently free on bail.[2]

At the hearing on the motions, Government counsel represented that the Government did not have or obtain information by eavesdropping. Petitioner accepted this representation as given in good faith, but apparently had some reservations due to the large number of people connected with the case and the possibility that eavesdropping information might not have come to the attention of the Government counsel. The motion for disclosure of information obtained by eavesdropping will be denied without prejudice to renewal if and when it appears that the Government obtained information through eavesdropping

The motion for production of documents relates to a G–2 dossier[3] compiled on petitioner by United States Army Counterintelligence personnel, and approximately 450 questionnaires mailed by the Government to military and non-military patients of petitioner. It should be noted at the outset that petitioner did not request specific docu-

---

States, to the prejudice of good order and discipline in the armed forces, and with the design to promote disloyalty and disaffection among the troops. These statements related to the petitioner's opinions that the presence of the United States forces in Vietnam was wrong; that special forces troops were liars, thieves and murderers; and that "colored" soliders should refuse to serve in Vietnam.

Additional Charge I. Article 133—Intemperate, defamatory, provoking, disloyal, contemptuous and disrespectful statements to enlisted personnel of the type set forth in Charge II.

Additional Charge II. Article 133—Conduct unbecoming an officer and gentleman by wrongfully and dishonorably communicating to a sergeant in Vietnam, with intent to impair and interfere with the performance of the sergeant's duty, petitioner's views on the evil of United States involvement in Vietnam, his views that the sergeant was helping those who suppress Negroes and poor whites in the United States to suppress the Vietnamese, and that petitioner would refuse to serve in Vietnam if assigned there.

Additional Charge III. Article 134—Advising, counseling, urging and attempting, with intent to interfere with, impair and influence the loyalty, morale and discipline of United States forces, to cause insubordination, disloyalty and refusal of duty by the sergeant referred to in Additional Charge II.

2. The district court, the Court of Appeals for the Third Circuit, and the Circuit Justice, Mr. Justice Brennan, denied bail. Subsequently, Mr. Justice Douglas directed the district court to release petitioner on bail pending final determination of the application for bail when the full Court convened. On August 5, 1969, petitioner was admitted to bail. He was scheduled to be released from prison on August 14, 1969. On October 13, 1969, the Supreme Court continued petitioner on bail.

3. The record refers to this dossier as a "G–2 dossier" or "intelligence dossier." The file in question is apparently more formally described as a United States Army Counterintelligence Records Facility file.

ments, but rather has demanded the entire dossier and all the questionnaires.

In Harris v. Nelson, 1969, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281, the Supreme Court held that while the discovery provisions of the Federal Rules of Civil Procedure do not apply to habeas corpus proceedings, a "district court may, in an appropriate case, arrange for procedures which will allow development, for purposes of the hearing, of the facts relevant to disposition of a habeas corpus petition." The Court indicated that the nature and extent of permissible discovery is committed to the discretion of the district court, and furnished a general guideline for the courts to follow:

> " * * * [I]n exercising this power, the court may utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elswhere in the 'usages and principles of law.' " (Footnote omitted.)

Turning first to the questionnaires, it appears that only 13 of the 450 persons contacted were called as witnesses at the court-martial proceedings. The questionnaires of these 13 witnesses were turned over to the chief defense counsel.[4] The Army refused to disclose the contents of the remaining questionnaires on the basis that they were protected from disclosure by 18 U.S.C.A. § 3500, commonly known as the Jencks Act. Petitioner does not dispute that the Jencks Act principles may be applied in court-martial proceedings. United States v. Augenblick, 1969, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537. He states, however, that Augenblick recognized that "It may be that in some situations, denial of production of a Jencks Act type of a statement might be a denial * * * " of a constitutional right. Petitioner contends that the denial of access to the questionnaires deprives him of constitu-

tional rights. He states "the defense sought these documents in order to demonstrate Dr. Levy's innocence of the four pure speech charges which were based upon his having made statements 'publicly' to 'divers' persons." It is apparently petitioner's contention that if the other 437 questionnaires did not show information which would support the charges, this would tend to refute the charges of "public" utterance to "divers" persons.

■ ■ Petitioner has not specified the constitutional issue which he asserts is involved. At the argument, counsel argued only that aside from any question involving the Jencks Act, he was entitled to know what the Army's case was based on. Even under the rules applicable to ordinary criminal actions, a defendant is not entitled to inspection of the reports and statements of possible Government witnesses, except in accordance with the Jencks Act. Rule 16, Fed.R.Crim.P.; Peek v. United States, 9 Cir. 1963, 321 F.2d 934; Corbett v. Patterson, D.Colo.1967, 272 F.Supp. 602. Petitioner has not alleged an infraction of the Jencks Act. Here, as in Augenblick, supra, there is no indication that the questionnaires contained evidence favorable to the defendant.[5] Moreover, the names of the persons to whom the questionnaires were sent were taken from the patient book at the Dermatology Clinic. There is no suggestion that petitioner did not have access to this book to make his own investigation. If petitioner did not make certain statements to others than the 13 witnesses produced at the court-martial, this certainly would not negate the fact that he made the statements to the 13 witnesses, or that the utterances were "public" and made to "divers" persons. It is not "evidence favorable to defendant." In short, the procedure followed at the

---

4. At the court-martial, petitioner was represented by both civilian and military counsel. Chief defense counsel was Charles Morgan, Jr., Esq., who also represents petitioner in this habeas corpus action.

5. Cf. Brady v. Maryland; 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

court-martial with respect to these questionnaires did not violate a constitutional mandate, or elevate the matter to a constitutional level, nor was there anything constitutionally unfair "where the barriers and safeguards are so relaxed or forgotten * * * that the proceeding is a mere spectacle * * * or trial by ordeal * * * than a disciplined contest." United States v. Augenblick, supra. It follows that since the questionnaires were properly denied the petitioner at the court-martial, provisions of Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act should also control this attempt at discovery in this habeas corpus proceeding. Harris v. Nelson, supra; cf. United States v. White, 4 Cir. 1965, 342 F.2d 379; United States v. Kelly, 10 Cir. 1959, 269 F.2d 448. Accordingly, respondent need not produce the questionnaires until such time as an evidentiary hearing is held and he produces a witness whose questionnaire would qualify for production under the Jencks Act.

Petitioner argues that the dossier contained information that petitioner, in his pre-service days, attended meetings of alleged subversive or communist groups, and that while in service petitioner engaged in off-duty, off-base political and civil rights activities consisting of Negro voter-registration drives in a South Carolina town; that the Army counterintelligence agent, allegedly himself a racist, who played a role in the compilation of the dossier, lived in that town; that Colonel Fancy, petitioner's commanding officer, intended to prefer charges against petitioner under Article 15 of the Uniform Code of Military Justice,[6] Commanding Officers Non-Judicial Punishment, for disobeying an order to train special forces troops in determatology, the punishment for which is minor; that the agent showed Colonel Fancy the complete dossier which included petitioner's political and civil rights views and activities; that as a result of the information in the dossier, Colonel Fancy raised the charges to general court-martial status, the punishment for which is severe; and that the court-martial proceedings were, therefore, a plot by the agent, Colonel Fancy and others to punish petitioner not for disobedience of the order, but for his political and racial views.

At the court-martial, petitioner was given 80 pages of the 180-page dossier, but the remainder was held not to be Jencks Act material. Also some of the pages contained classified security information. Subsequently, the law officer[7] stated that information in the remaining 100 pages was irrelevant but permitted military defense counsel, assistant counsel in the proceeding, to review the dossier to determine the relevancy of the remaining pages. Military defense counsel advised the chief civilian defense counsel[8] that the remainder of the dossier was irrelevant, but he was not permitted to inform chief civilian counsel of the contents. The entire file was also reviewed by the law officer, in camera, and he determined that nothing in the withheld material was relevant to the proceedings. Petitioner states he demanded and now demands the entire dossier on the constitutional grounds that the dossier was used to prefer charges to punish him for his political beliefs contrary to the freedom of speech provisions of the first amendment; that the prohibition of military defense counsel from revealing the contents of the dossier to chief defense counsel results in a lack of due process of law under the fifth amendment; and that denial of access to the dossier to chief defense counsel deprived petitioner of effective assistance of

---

6. 10 U.S.C.A. § 815.

7. Equivalent to a trial judge. 10 U.S.C.A. § 826; Juhl v. United States, 1967, 383 F.2d 1009, 181 Ct.Cl. 210.

8. See note 2, supra.

counsel contrary to the sixth amendment.[9]

We are only concerned with the application of the Jencks Act to a quasi-criminal proceeding, unless the Constitution requires production of materials which are outside the scope of the Act. United States v. Augenblick, supra, citing the concurring opinion of Mr. Justice Brennan in Palermo v. United States, 1959, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287. With respect to the first amendment claim, petitioner states:

"The G–2 Dossier's production could have resulted in voiding petitioner's conviction on at least any of the following grounds:

1. If it disclosed that the escalation of the charges to general court-martial status was based upon Dr. Levy's political views; or,

2. If it disclosed that the escalation of the charges to general court-martial status was based upon Dr. Levy's off-base out-of-uniform political or civil rights activities; or,

3. If information concerning his pre-service political activity was included therein; Cf. Harmon v. Brucker, 335 U.S. 579 [78 S.Ct. 433, 2 L.Ed.2d 503] (sic) (1958); * * *."[10]

Petitioner claims that these documents "could" have resulted in avoiding the conviction. He cites no authority for the first two of the three grounds. The Harmon case does not support petitioner's categorical statement that if the file included information concerning pre-induction activity, the conviction could be upset. In Harmon, the Army discharged two soldiers, issuing them certificates other than "honorable," based in part on their pre-induction activities rather than exclusively upon their military records. In deciding that this was improper, the Court held that under the applicable statutes a discharge other than honorable must be determined solely by the soldier's military record. No constitutional question was involved. Even if petitioner's dossier disclosed pre-service activities, the charges were based on petitioner's statements and actions while a member of the military service and not on his pre-service activities. And, as far as can be determined, the court-martial proceeding took into account evidence relating to these charges and not to pre-service political activities.

Petitioner contends that if the file disclosed the reason for bringing the charges was his political and civil rights views, his conviction could be overturned. No authority is cited for this proposition, and Harmon does not support it because the record in that case left no doubt that matters outside the soldiers' military record were considered, and the question was whether this was permissible under the statute. The Army does not admit that these pre-service and outside activities played any role in petitioner's case.

In the memorandum submitted with the answer to the rule to show cause issued in this case, the respondent admits that Colonel Fancy was moved to elevate the charges after reviewing the dossier. He testified he did so on the basis of sworn statements which contained information which he did not have at the time he preferred the Article 15 charges and which he concluded "added to the case":

" 'A. I felt as result of his (sic) review that the dossier did contain sworn statements which added to the case and I decided that the Court-Martial proceedings would be more appropriate

9. Petitioner apparently also contended that to the extent that the dossier may contain eavesdropping information, this violated his fourth amendment rights. This contention has apparently been put to rest

with the Government's representation that it obtained no information by eavesdropping.

10. Citation is 355 U.S. 579.

than an Article 15 proceeding. R. 260.' "

In its memorandum submitted in connection with the motion, respondent represents, and petitioner does not deny, that the sworn statements indicated that petitioner had willfully disobeyed an order [11] and that these statements were released to petitioner. Thus, petitioner received the statements in the dossier which motivated Colonel Fancy to elevate the charge.

■ It has never been the law that a defendant may have free access to an investigative file. He may have access to information under the Jencks Act, Rosenberg v. United States, 1959, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304, and to information which constitutional principles require to be turned over. Palermo v. United States, supra. Petitioner had not cited any infraction of the Jencks Act, and the present record does not spell out a constitutional mandate which would permit petitioner to have unlimited access to the Army's investigative file.

■ If the Army were required to turn over only Jencks Act material, then petitioner was not denied effective assistance of counsel when the Army turned over the entire file to the defense, albeit in a limited way. It could have insisted on a strict application of the Jencks Act, and of the *in camera* inspection procedure provided for statements covered by the Act, Palermo v. United States, supra. Instead, it permitted military assistant defense counsel to review the file and to request any document deemed relevant. No request was made. Petitioner points to Alderman v. United States, 1969, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176, as rejecting the *in camera* inspection procedure. That case did not involve Jencks' type statements, but, rather, the exclusionary rule fashioned under the fourth amendment with respect to eavesdropping and its fruits. Here it has been affirmatively represented that the file contains no eavesdropping information. In Alderman, the Government admitted that it had eavesdropping information and the Court rejected *in camera* inspection because of the volume and type of the material to be examined. It stated in Note 14 on page 182, 89 S.Ct. on page 971:

"[14] In both the volume of the material to be examined and the complexity and difficulty of the judgments involved, cases involving electronic surveillance will probably differ markedly from those situations in the criminal law where *in camera* procedures have been found acceptable to some extent. Dennis v. United States, 384 U.S. 855, [, 86 S.Ct. 1840, 16 L.Ed.2d 973] (1966) (disclosure of grand jury minutes subject to *in camera* deletion of 'extraneous material'); Palermo v. United States, 360 U.S. 343, 354, 79 S.Ct. 1217, 1225 [3 L.Ed.2d 1287 (1959) (whether the Jencks Act, 18 U.S.C. § 3500, requires disclosure of document to the defense); Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639] (1957) (disclosure of informant's identity). * * * "

Viewed in this light, the restrictions placed upon military assistant defense counsel do not amount to a denial of due process.

■ Petitioner argues that although he requested that the dossier, sealed if necessary, be made part of the record for appellate purposes, this was not done. Even under the Jencks Act if a court refuses inspection of all or part of a statement, the statement need only be preserved by the United States to be made available if defendant appeals. Here, the requests go to the entire dossier, and not to a Jencks' type statement. Petitioner appealed to the Army Board of Review. Since petitioner requested the entire dossier, the Board had before it only the question of whether petitioner had demonstrated his right to the dossier as a matter of law, and not whether a specific document

---

[11]. As opposed to neglect to perform duty.

was improperly withheld. It found no violation of constitutional rights:

"The claims of appellant that his civilian attorney could not peruse the complete 'G–2 Dossier' [footnote: The major portion of this file was released to appellant. Some documents were not but were examined by military defense counsel and the law officer in camera to determine their inapplicability to the trial. Defense disclaimed the application of the Jencks Act, 18 USC 3500.] and that his conviction violates constitutional prohibitions against bills of attainder and ex post facto laws as well as the remaining assigned errors do not warrant any summarization or discussion. Compendium, 37."

Petitioner complains of this "cavalier" disposition of the claim. In United States ex rel. Thompson v. Parker, 3 Cir. 1968, 399 F.2d 774, the court said, "we are aware of no requirement that appellate courts, military or otherwise, must discuss in detail each and every contention—no matter how specious—of every appellant."

Finally, petitioner argues that without the dossier he was faced with a "grisly 'Hobson's Choice' " of whether to take the witness stand in his own defense, knowing that the prosecutor had access to a dossier which contained matters so damaging and so important to the accuser that he elevated the charges to general court-martial status. The answer to this is two-fold. Every defendant in any criminal trial must make this same choice; and regardless of the matter of choice, Colonel Fancy testified to the reasons for elevation of the charges, and the documents on which the elevation was based were released to petitioner.

■ Historically discovery has been restricted in criminal cases. In Developments in the Law—Discovery, 74 Harv.L. Rev. 940, 1052 (1961), it is stated:

"Traditionally, the narrow scope of discovery in criminal litigation is justified by three considerations which are said to be peculiar to criminal law. First, there has been a fear that broad disclosure of the essentials of the prosecution's case would result in perjury and manufactured evidence. Second, it is supposed that revealing the identity of confidential government informants would create the opportunity for intimidation of prospective witnesses and would discourage the giving of information to the government. Finally, it is argued that since the self-incrimination privilege would effectively block any attempts to discover from the defendant, he would retain the opportunity to surprise the prosecution whereas the state would be unable to obtain additional facts. This procedural advantage over the prosecution is thought to be undesirable in light of the defendant's existing advantages. The validity of each of these objections must be appraised in each of the situations in which the defendant may seek discovery and must be weighed against the importance to the defendant of the disclosure."

While this habeas corpus action is technically civil in nature, nevertheless, the court is requested to review certain aspects of a court-martial proceeding with criminal sanctions. On the present record, there is nothing but petitioner's speculation that the dossier "might" contain something out of which he may be able to construct an argument that constitutional rights have been violated. In a review of court-martial proceedings, the court need only determine whether the military courts have given due consideration to petitioner's contentions. United States ex rel. Thompson v. Parker, supra.

The motions will be denied.