**Otis LOPER, Petitioner-Appellant,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellee.**

**No. 29235.**

United States Court of Appeals,
Fifth Circuit.

March 24, 1971.

Dan G. Matthews, John Cabiness, Houston, Tex., for petitioner-appellant.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Robert C. Flowers, Robert Darden, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before GEWIN, MORGAN and ADAMS,* Circuit Judges.

GEWIN, Circuit Judge:

Petitioner Otis Loper appeals from the denial of his petition for writ of habeas corpus. After conducting a thorough and extensive hearing on the petition, Judge Connally denied the writ in an unreported opinion wherein he made findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). We find no error in the findings and conclusions of the district court, and affirm.

* Of the Third Circuit, sitting by designation.

Loper was charged and convicted of the statutory rape of his eight year old step daughter in the district court of Harris County, Texas on November 17, 1947. On November 20, 1947 Loper's motion for new trial was denied, and he was sentenced to serve fifty years in the state penitentiary. He did not appeal.

After serving fifteen years of his sentence, Loper was paroled on November 9, 1962 from the Texas Department of Corrections and given permission to move to Mississippi where he was assigned to a Mississippi state parole officer for supervision. Loper's parole, however, was of short duration. On February 5, 1963 he was arrested in Mississippi for car theft. Thereafter, when the Texas Board of Pardons and Paroles learned from the Mississippi Parol Board that Loper had been arrested for car theft and that the evidence against him was conclusive, the Board recommended to the Governor of the State of Texas that he revoke Loper's parole. In accordance with this recommendation the Governor on March 4, 1963, entered a parole revocation order and directed the issuance of a warrant for Loper's arrest. Before this order could be executed, however, Loper escaped from the Carthage, Mississippi, jail and remained a fugitive for over a year. When he was finally apprehended on April 6, 1964, in St. Joseph, Louisiana, he was taken into custody and eventually transported to the Texas Department of Corrections where he has since remained incarcerated.

Beginning in 1949 Loper has unsuccessfully filed a steady succession of petitions for the writ of habeas corpus, in the State District Courts, the Court of Criminal Appeals, and at least two United States District Courts.[1] Following Loper's most recent petition,[2] the district court held a plenary hearing on November 10, 1969 pursuant to the order of this court directing an evidentiary hearing on the question whether petitioner had been deprived of his right to appeal. Prior to the hearing petitioner and his court-appointed counsel were instructed that, in addition to the single issue remanded to the district court, petitioner should present any and all conceivable issues which might be raised on his behalf so that the legality of his confinement might be conclusively determined. In accordance with these directions the following points were raised: (1) the propriety of impeaching defendant by prior convictions wherein he was not represented by counsel; (2) the adequacy of representation of counsel; (3) the alleged suppression of evidence by the state; (4) the denial of parole revocation hearing; (5) and the denial of pre-trial discovery.

### Impeachment by Prior Conviction

At his state court trial for rape in 1947, Loper took the stand and testified in his own behalf. During the cross-examination of Loper, counsel for the state asked him how many times he had been convicted of a felony in Texas or any other state. Loper readily admitted that he had been convicted of burglary on four different occasions during the period 1931–1940—three times in Mississippi and one time in Tennessee. On one of the occasions in question he used the assumed named of Milton Cummings. No objection as to the validity of these convictions was raised and the records of the convictions were not offered in evidence.[3] The evidence in question was introduced solely for the purpose of im-

---

1. For the reported cases, see: Loper v. Beto, 383 F.2d 400 (5th Cir. 1967); Loper v. Ellis, 263 F.2d 211 (5th Cir. 1959); Loper v. Ellis, 224 F.2d 901 (5th Cir. 1955); Ex parte Loper, 223 S.W. 2d 523 (Tex.Crim.App.1949); Ex parte Loper, 219 S.W.2d 81 (Tex.Crim.App.), cert. denied 337 U.S. 946, 69 S.Ct. 1504, 93 L.Ed. 1749 (1949).

2. Loper v. Beto, 383 F.2d 400 (5th Cir. 1967).

3. Counsel for Loper objected to some of this evidence on the ground that one or two of the convictions were too remote in time.

peachment; it did not relate to, or increase the punishment. There is not the slightest suggestion in the record that the state of Texas had any knowledge of a possible infirmity in the convictions. Loper now insists that evidence of these convictions was not admissible for the purpose of impeachment because the convictions were obtained in violation of the principles of Gideon v. Wainwright.[4] He claims that he did not have counsel at these trials and that he did not voluntarily or intelligently waive the right to counsel.

On this issue Loper places heavy reliance upon Burgett v. Texas [5] which held that former convictions when counsel was not provided or intelligently waived could not be used for the purpose of enhancement under the Texas Penal Code. By analogy he argues that the same rule should apply to the use of such former convictions for the purpose of impeachment. We decline to extend the teachings of *Burgett* to the situation here presented. The convictions mentioned have been of record for a number of years, yet the record before us does not disclose that any attack has ever been made upon those convictions. Except for the assertions of Loper the record fails to furnish any conclusive information as to the facts and circumstances surrounding his former convictions. So far as the record before us reveals, there are outstanding, unchallenged, state court convictions of felonies in the States of Mississippi and Tennessee. We recognize the force of Loper's argument to the effect that such convictions may have impaired his credibility in the minds of the jury as a witness in his own behalf; nevertheless, if the convictions possessed the infirmities which Loper claims, he has failed to make any effort to set them aside for over 30 years. No one else could have done so. Surely such an attack was available to him in view of the retroactive application of the *Gideon* decision which was decided over six years prior to the hearing under review. Furthermore, it is obvious to us that the use of such convictions as evidence for purposes of impeachment which goes only to credibility, is not nearly so serious as the use of a conviction for enhancement, which may add years of imprisonment to the sentence of a defendant. Although we do not feel bound on this issue by decisions of the Texas Court of Criminal Appeals, we do take note of the fact that decisions in the State of Texas have declined to accept Loper's contention.[6] Moreover, in the recent case of Barbosa v. Craven,[7] the Ninth Circuit likewise refused to grant relief in the circumstances here presented. The issue presented raises an evidentiary question. The fact that there are possible infirmities in the evidence does not necessarily raise an issue of constitutional proportions which would require reversal. In Chapman v. California the Court stated:

> We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.[8]

4. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

5. 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

6. Bustillos v. State, 464 S.W.2d 118, 8 CrL 2425 (Tex.Ct.Crim.App. Feb. 17, 1971). Simmons v. State, 456 S.W.2d 66 (Tex.Cr.App.1970).

7. 431 F.2d 698 (9th Cir. 1970). In so ruling the court stated:
 It is settled California law that a de-

fendant may be impeached by prior convictions notwithstanding California Penal Code § 1025. People v. Ricci, 239 Cal.App.2d 233, 48 Cal.Rptr. 631 (1966).

8. 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705. See also Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213.
 A typical example of the use of improper evidence which does not require reversal arises when perjured testimony is used *without* the knowledge of agents of or

### Effective Representation of Counsel

 Petitioner contends that the trial court erred in not holding that he was deprived of effective representation of counsel. Although the right to counsel means the right to effective assistance of competent counsel,[9] the Sixth Amendment does not guarantee subjectively satisfactory results for those accused of crime; nor does it guarantee errorless and prevailing counsel, or even the best counsel available.[10] As we said in MacKenna v. Ellis:[11]

> We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.[12]

Only if the attorney's conduct is "shocking to the conscience of the Court" can the charge of ineffective counsel prevail.[13]

 After an evidentiary hearing at which petitioner was represented by court-appointed counsel and at which petitioner himself testified on the matter, the trial court found the following facts: that Loper's attorneys[14] had contacted various witnesses listed on the state's complaint prior to trial and had ascertained the substance of their testimony; that the attorneys had examined the indictment for flaw; that they had consulted with the District Attorney with respect to the plea of guilty and an agreed sentence, had arrived at an agreement whereby the petitioner would plead guilty in return for a ten year sentence, a trade which petitioner declined to accept; and finally that they took steps to appeal the judgment of conviction but were dissuaded from doing so by Loper.[15] From these facts the court concluded that Loper's contention that he was deprived of effective representation of counsel was without merit.

Upon a full consideration of all of the testimony presented, this court must conclude that the findings of the district court were not clearly erroneous. Rule 52(a), F.R.Civ.P.

### Suppression of Evidence

Petitioner claims that he was denied due process of law because the state suppressed evidence favorable to his defense. He contends that the state threat-

counsel for the state. See: Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); Jackson v. United States, 384 F.2d 375 (5th Cir. 1967), cert. denied 392 U.S. 932, 88 S.Ct. 2298, 20 L.Ed.2d 1392; Enzor v. United States, 296 F.2d 62 (5th Cir. 1961); Sears v. United States, 265 F.2d 301 (5th Cir. 1959); United States v. Jakalski, 237 F.2d 503 (7th Cir. 1956).

9. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763, 773 (1970).

10. See: United States v. Rubin, 433 F.2d 442, 444 (5th Cir. 1970); Caraway v. Beto, 421 F.2d 636, 637 (5th Cir. 1969); Bendelow v. United States, 418 F.2d 42, 50 (5th Cir. 1969); Odom v. United States, 377 F.2d 853, 859 (5th Cir. 1967).

11. 280 F.2d 592 (5th Cir. 1960).

12. Id. at 599. See: Bendelow v. United States, 418 F.2d 42, 50 (5th Cir. 1969).

13. United States v. Mancuso, 423 F.2d 23, 29 (5th Cir. 1970).

14. Petitioner either retained or was assigned two attorneys to represent him on the rape charge. Both were experienced lawyers in the trial of criminal cases; one in fact had specialized for over 30 years in the defense of criminal cases.

15. Although Loper insisted that his attorneys deprived him of his right to appeal, the district court dismissed this contention after making the following factual determination:

"L. D. Harris, [one of petitioner's attorneys] testified on prior occasions in similar hearings with reference to the same matters. It is his testimony, which I find to be entirely credible and which I accept, that following the trial he and Letts [Loper's other attorney] discussed the matter of an appeal with petitioner; that petitioner advised his attorneys without qualification that he did not wish to, and would not take an appeal." (R. 273).

See: Lamar v. Wainwright, 423 F.2d 1104 (5th Cir. 1970); Ballard v. Howard, 403 F.2d 653 (6th Cir. 1968).

ened to prosecute his wife, Willette Loper, for insufficient supervision of her daughter if she appeared at the trial and that this threat caused her to leave town so that she could not testify in his behalf.

With reference to the availability of Mrs. Loper as a witness and the possible relevancy of her testimony, it is fair to state that all of the evidence developed in the district court does not point in one direction. There was evidence tending to indicate that Mrs. Loper was present in the hallway of the courthouse during the trial, but that she was intoxicated. J. H. Letts, one of Loper's attorneys, although now deceased, testified in 1949 in a habeas corpus proceeding as follows:

> Your wife, Willette Loper, was here the time of your trial, but she did not take the witness stand and testify. She was outside of the Courtroom in the hall. She had too much to drink and couldn't take the witness stand. I called for her but she didn't come in the Courtroom.[16]

Defense attorneys asked for a continuance and the state trial court inquired of them as to the nature and materiality of Mrs. Loper's proposed testimony. Defense counsel indicated that Mrs. Loper's proposed testimony would relate to what "the little girl" (alleged victim) said to Mrs. Loper upon her return from the grocery store following the alleged rape. The state trial judge denied the motion for continuance on the ground that such testimony would only corroborate that of the victim. It should be noted that there are strong indications in the record that Mrs. Loper took the victim to the hospital for a medical examination on the day the crime was supposed to have been committed.

While we do not necessarily agree with the reasons assigned by the Texas trial court for denying the motion, we cannot conclude that the ruling was of such magnitude and importance as to require a reversal of the finding of the United States District Court on this issue. It is important to remember that according to the victim's testimony the attack occurred in the absence of Mrs. Loper— she had gone to the grocery store. We also take particular note of the affidavit of Mrs. Loper in which she charged that the Texas authorities had threatened her in order to prevent her testimony. To say that this "purported affidavit" is of dubious quality merely echoes the accurate description of the affidavit in *Loper v. Ellis* [17] wherein the court said:

> It is dated April 26, 1948, and is addressed "To the Honorable Judges: Court of Criminal Appeals; State of Texas." It is certified as being a true copy by the Clerk of the Court of Criminal Appeals of Texas. The Harris County authorities charged with making the alleged threat are not named as individuals or by office. The affidavit does not give the address of the affiant, though appellant states it was made at Dora, Alabama, in Walker County. The seal of the justice of the peace is not shown on the certified copy, except by notation. Neither does the affidavit express a willingness on the part of affiant to return voluntarily to testify in person.

Our examination of the record, several exhibits and the decisions dealing with this case, fails to make clear just what testimony Mrs. Loper would have given if she had testified. Her affidavit executed sometime after the trial does purport to constitute an *ex parte* assertion that she left town because of a "warning" from Harris County authorities; nevertheless, substantial evidence in the record contradicts this assertion. The testimony of Mr. Letts, counsel for the appellant at the original trial, contradicts it. Moreover, the transcript of the original trial strongly indicates that Loper and his wife were completely estranged following the alleged attack on

16. This statement appears in a short transcript in narrative form certified by the official Court Reporter of the Criminal Court of Harris County, Texas, on the 13th day of September 1949.

17. 224 F.2d 901, 904 (5th Cir. 1955).

Mrs. Loper's eight year old daughter. At his state court trial Loper testified that he had not heard from his wife "since soon after" he was arrested. He further testified that he and Mrs. Loper had a fight on the day of the alleged rape soon after Mrs. Loper returned from the grocery store, although he stated that the fight was not the result of any attack on the child. At one point in the trial he volunteered the statement, "I just married the wrong woman."

In rejecting the contention with respect to the suppression of evidence, the district court relied upon the fact that this question had been raised repeatedly in prior proceedings and asserted:

> This question has been raised by Petitioner repeatedly in prior proceedings and after full consideration and evidentiary hearing, the point has been denied. I refer to Loper v. Ellis, C.A. 8469 (S.D.Tex.1956), Loper v. Ellis, 224 F.2d 901 (5th Cir. 1955), and Loper v. Rushing, C.A. 2641 (E.D. Tex.1959). These prior dispositions are bottomed on the fact that Petitioner never showed wherein his wife's testimony would have been to his advantage. The question having been heretofore repeatedly determined, this court adopts that action.

Further, the district court took note of the fact that Mr. Harris, surviving associate counsel who represented Loper during the rape trial, testified that he understood that Mrs. Loper was in the corridor of the courthouse during Loper's trial. He stated that he was informed by others present that she was drunk and had left the courthouse. In addition to the reasons assigned by the district court on this point, we are firm in our judgment that the record amply supports the conclusion that the state did not suppress evidence by causing Mrs. Loper to leave.[18] For all of the foregoing reasons we are unable to conclude that the district court committed error with respect to this conclusion.[19]

### Parole Revocation

Loper next attacks the Texas parole revocation procedure contending that he was denied equal protection of the law because his parole was revoked without a hearing. He argues that the Texas law in effect at the time of his parole revocation provided two dissimilar and discriminatory methods by which revocation could be accomplished. On the one hand, Article 781b of the Texas Code of Criminal Procedure delegated the power to revoke paroles to the Board of Pardons and Paroles, and provided the following revocation procedure:

> Sec. 20. * * *
>
> Whenever a paroled prisoner is accused of a violation of his parole on information and complaint by a law enforcement officer and/or probation and parole officer *he shall be entitled to be heard on such charges before the Board on such rules and regulations as the Board may adopt;* provided, however, said hearing shall be held within forty-five days of the date of arrest and at a time and place set by the Board. (Emphasis added)

By contrast, Article 4, Section 11, of the Texas Constitution, Vernon's Ann.St. made no reference to revocation procedure but simply granted the governor the

18. The prosecution issued subpoenas for several persons including the mother of the victim, Willette Loper. All of the subpoenas were served except for the subpoena on Mrs. Loper; her subpoena had been returned unserved with the notation that her whereabouts were unknown. The prosecution did not attempt to call Mrs. Loper to the witness stand because under Texas law a wife cannot be used as a witness against her husband.

19. Lamar v. Wainwright, 423 F.2d 1104, 1106 (5th Cir. 1970); Caraway v. Beto, 421 F.2d 636, 637 (5th Cir. 1970); Washington v. Smith, 417 F.2d 301, 302 (5th Cir. 1969); Heath v. Wainwright, 408 F.2d 1020 (5th Cir. 1969). Cf. Ballard v. Howard, 403 F.2d 653 (6th Cir. 1968).

"power to revoke paroles and conditional pardons." Petitioner interprets the above two provisions to allow those whose parole is revoked by the Parole Board to have a revocation hearing, but to deny a hearing to those whose parole is revoked by the governor. From this view he insists that the Texas criminal procedure is in violation of the equal protection clause because it prescribes a different procedure for persons in like situations.

In a proper case we might tend to agree with petitioner's statement of the law, but under the facts and in the circumstances presented by the record before us we reject his contention. There is respectable authority to the effect that the United States Constitution does not compel a state to provide a hearing before exercising its discretion to terminate parole.[20] Nevertheless, it is elemental that the right to equal protection under state law includes the right to be tried in the same manner as others accused of similar infractions. Thus, once a state has determined to provide by statute the right to a hearing on the question of parole revocation, as Texas did with Article 781b, Tex.Code Cr.P., it must accord the benefits of that procedural right equally to all parolees in similar circumstances.[21] Failure to afford a hearing on a legitimate request in circumstances and under facts which meet the requirements and provisions of

the Texas statute might deprive a parolee of "equal protection" of the state law, a right guaranteed by the appropriate provision of the Fourteenth Amendment.

Loper relies on the statute cited above and rules and regulations of the Board of Pardons and Paroles adopted pursuant to its provisions. Such rules and regulations provide for a hearing within forty-five days after arrest on a parole revocation warrant. He contends that he requested a hearing but was not given one.

With respect to the issue of parole revocation, the United States District Court concluded:

It is undisputed that petitioner was granted parole in 1962 and paroled to the state of Mississippi under the Interstate Parole Compact. Several months thereafter he was charged with car theft and while being confined on such charge escaped from jail by sawing his way out with a hacksaw blade. Revocation of his probation was recommended to the Governor of the state of Texas and the Governor took the recommended action. Petitioner was a fugitive for approximately a year thereafter and ultimately was re-arrested. In this state the holding of a hearing by the Board of Pardons and Paroles is discretionary. Ex parte Sellars, 384 S.W.2d 351 (Tex. Ct.Crim.App.1964); Ex Parte Lewis, [170 Tex.Cr.R. 254,] 339 S.W.2d 900

20. Although the traditional view is that the Constitution does not require a hearing before terminating parole, see: Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935); Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L. Ed. 266 (1932); Hiatt v. Compagna, 178 F.2d 42 (5th Cir. 1949) aff'd, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639 (1950); Goldsmith v. Sanford, 132 F.2d 126 (5th Cir. 1942) cert. denied 318 U.S. 744, 63 S.Ct. 827, 87 L.Ed. 1122; Hamrick v. Boles, 231 F.Supp. 507 (N.D.W.Va. 1964); there exists critical commentary which would require the application of *due process* in the granting and revocation of parole. The following articles, notes and comments are representative: Cohen, Sentencing, Probation and the Rehabilita-

tive Idea, 47 Tex.L.Rev. 1 (1968); Milligan, Parole Revocation Hearings in California and the Federal System, 4 Cal. West.L.Rev. 18 (1968); Sklar, Law and Practice in Probation and Parole Revocation Hearings, 55 J.Crim.L. 175 (1964); Comment, Rights v. Results: Quo Vadis Due Process for Parolees, 1 Pacific L.J. 321 (1970); Comment, Constitutional Law; Parole Status and the Privilege Concept, 1969 Duke L.J. 139, 28 So.Cal. L.Rev. 158 (1955).

21. See: Cochran v. State of Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453 (1942); Hewett v. State of North Carolina, 415 F.2d 1316, 1322 (4th Cir. 1969); Hamrick v. Boles, 231 F.Supp. 507, 510 (N.D.W.Va.1964).

(Tex.Ct.Crim.App.1960), cert. denied 368 U.S. 960 [82 S.Ct. 405, 7 L.Ed.2d 392]. Such hearings are not constitutionally required. Escoe v. Zerbst, 295 U.S. 490 [55 S.Ct. 818, 79 L.Ed. 1566] (1935); United States ex rel Heacock v. Myers, 251 F.Supp. 773 (E.D.Penn.1966); Johnson v. Tinsley, 234 F.Supp. 866 (D.Colo.1964). Irrespective of any other consideration, it would appear that his admitted escape from custody and remaining at large for an extended period would constitute a valid basis for the revocation. This point is without merit and is denied.

▇▇▇ The record discloses that the order of the Governor of Texas revoking petitioner's parole was dated March 4, 1963. He escaped from the jail in Mississippi within two weeks thereafter, on March 21, 1963. Loper testified, somewhat equivocally, that he demanded a parole revocation hearing while he was in jail in Mississippi. He further testified that when he was arrested in June 1964, over a year later, he stated to the arresting officers that he desired to have a parole hearing. The credibility of Loper is subject to serious doubt. As a matter of fact the district court concluded that he had falsely testified to material facts from time to time. In any event, if it is believed that Loper requested a hearing in accordance with the rules and regulations of the Board, while confined in the Mississippi jail between March 4 and March 21, it would have been impossible to hold such a hearing in view of the fact that Loper was a fugitive from justice from March 21, 1963 until June 1964. In fact we think it is incredible to conclude that he was seeking a hearing before the Texas Board of Pardons and Paroles during the very period in which he was a fugitive, particularly in light of his conduct during this period. The records indicate that he was apprehended in the State of Louisiana while he was an escapee and charged with driving while intoxicated, for which he served a period of 60 days. He was also arrested during the period of escape in Louisiana for carrying a concealed weapon, but these charges were dropped. Texas did not obtain custody of him until the latter part of June 1964. In view of these facts we are unable to conclude that the district court reached an improper conclusion or that Loper has been denied any constitutional right.[22]

▇▇▇ Moreover, the court has received assurances from respondent as well as from the Texas Board of Pardons and Paroles that in all cases where "a parole has been revoked by the Governor, the parolee or his representative may request a hearing before the Board at any time, seeking reinstatement of parole."[23] In accordance with this pro-

---

22. We do not decide the question whether a state may treat out of state parolees in a different manner from those within the state. If we should disregard the particular facts of this case, it could be argued that serious doubts would still remain as to the equal protection argument. A parolee who is granted permission to leave the sentencing state and spend his time on parole in another state, is not in the same situation as those parolees who remain in the sentencing state. A state would be at a substantial disadvantage if it could not revoke the parole of a violator beyond its borders without first conducting a hearing. The holding of a revocation hearing in such circumstances could present many practical difficulties involving arrest, custody and similar problems. In certain circumstances it may not be unreasonable to conclude that the sentencing state has a legitimate interest in a rule which permits the revocation of a parole and the apprehension of an alleged parole violator who is beyond its orders without a hearing prior to revocation.

23. Letter from Pat Bullock, member Texas Board of Pardons and Paroles to Robert Darden, Assistant Attorney General, October 14, 1970. The letter in its entirety reads:
"Dear Mr. Darden:
In response to your question concerning the standard of the Texas Board of Pardons, and Paroles with reference to parole revocations, please be advised that when the Board of Pardons and

cedural stipulation by the Parole Board, we reject petitioner's contention that Article 781b Tex.Cr.P. and Article 4, Section 11 of the Texas Constitution should be read separately and apart to the end that petitioner is deprived of the equal protection of the Texas law. Instead, we advert to the fundamental rule of statutory construction that statutes and acts in pari materia should be construed together. Following this rule, Article 4, Section 11 should be construed with reference to, or in connection with Article 781b rather than be singled out for independent consideration. We hold, therefore, that Loper may request a hearing before the Board seeking reinstatement of his parole.[24]

### Denial of Pre-trial Discovery

 Petitioner asserts as his final contention that the district court erred in rejecting his pre-trial requests for Admissions and Written Interrogatories. Petitioner's counsel, in an effort to discover evidence which would be helpful to Loper in his habeas corpus proceedings, served the state with interrogatories and Request for Admissions of

Relevant Facts pursuant to Rule 33 and 36, Fed.R.Civ.P. When the state filed objections on the ground that the Request for Admissions was not authorized in federal habeas corpus proceedings, the court made the following docket entry:

> 8–26–69: Respondent's Motion to Deny Request for Admission and Written Interrogatories is hereby granted. Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969).

In Harris v. Nelson[25] the Supreme Court held that while the discovery provisions of the Federal Rules of Civil Procedure do not apply to habeas corpus proceedings, a "district court may, in an appropriate case, arrange for procedures which will allow development, for purposes of the hearing, of the facts relevant to the disposition of a habeas corpus petition." The court indicated that the nature and extent of permissible discovery is committed to the discretion of the district court, and furnished a general guideline for the courts to follow:

> We do not assume that courts in the exercise of their discretion will pur-

Paroles of Texas receives a report from a law enforcement officer or a parole officer that a parolee has violated the conditions of his parole, revocation is recommended immediately, pending further investigation, or if the facts presented to the Board are conclusive, revocation is recommended immediately without further investigation. This is standard procedure.

This procedure does not apply when the Governor exercises his constitutional authority to revoke a parole without a recommendation from the Board of Pardons and Paroles.

If a parole has been revoked by the Governor, the parolee or his representative may request a hearing before the Board at any time, seeking reinstatement of parole.

Very truly yours,
/s/ Pat Bullock
PAT BULLOCK
Member"

24. There is little doubt in our minds that Loper will be given full consideration by the Board of Pardons and Paroles of the State of Texas. Attached to a pro se brief filed by him in this cause is a letter from the Board dated March 4, 1970, wherein it is stated:

You know your long record; you know you have been paroled and violated that parole. I don't think you should accept the fact that you will never be paroled again. Your case is set for parole consideration in June, 1971, and it will be carefully evaluated at that time. No one knows now what decision the Board will reach at that time but don't give up hope. Continue your good adjustment and make the best ratings possible.

25. 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed. 281 (1969), reh. den. 394 U.S. 1025, 89 S.Ct. 1623, 23 L.Ed.2d 50.

sue or authorize pursuit of all allegations presented to them. We are aware that confinement sometimes induces fantasy which has its basis in the paranoia of prison rather than in fact. But where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry. Obviously, in exercising this power, the court may utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the "usages and principles of law." [26]

In the circumstances of this case and considering the full evidentiary hearing afforded petitioner on each of his contentions, in addition to numerous other court proceedings in which he has attacked his conviction, we are convinced that the trial court did not abuse its discretion in denying the Request for Admissions and Written Interrogatories.[27]

Due process postulates a day in court which means that no one shall be personally bound until he has been afforded a full opportunity to be heard. Beyond that there must be a point at which the legality of confinement is conclusively and finally determined unless our courts are to bog down completely. With Otis Loper we think that point has been reached and passed.[28]

Affirmed.

---

26. Id. at 300, 89 S.Ct. at 1091, 22 L.Ed.2d 291.

27. See: United States v. Wolfson, 413 F.2d 804, 807 (2d Cir. 1969) ; Wilson v. Wiegel, 387 F.2d 632 (9th Cir. 1967) ; Wilson v. Harris, 378 F.2d 141, 142 (9th Cir. 1967) ; United States v. Wiman, 304 F.2d 53 (5th Cir. 1962) ; Levy v. Parker, 316 F.Supp. 473 (M.D.Pa.1970).

28. We deem it appropriate to state that on this appeal counsel for Loper, appointed by the court, have rendered outstanding service. They have presented his contentions in a clear and cogent manner.