UNITED STATES, Appellant

v.

ROBERT W. FRANTZ, Private First Class,
U. S. Marine Corps, Appellee

2 USCMA 161, 7 CMR 37

No. 1114

Decided February 6, 1953

CDR. E. L. McDonald, USN, for Appellant.
CAPT. P. H. Williams, USMCR, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

On his plea of guilty, the accused was convicted by special court-martial[1] of four offenses, three of which are of no consequence here. A board of review set aside his conviction of the offense, charged in Specification 2 of Charge II, on the ground that its language did not allege a crime under the Uniform Code of Military Justice, 50 USC §§ 551–736. Thereupon, The Judge Advocate General, United States Navy, certified the following question to this Court:

"Whether, as a matter of law, specification 2 of Charge II failed to allege an offense in violation of Article 134 of the Uniform Code of Military Justice?"

The charge and specification in question alleged that the defendant violated Article 134 of the Uniform Code of Military Justice, 50 USC § 728, "in that . . . [he] did, at Long Beach, California, on or about 28 February 1952, wrongfully have in his possession with intent to deceive, an armed forces liberty pass . . . well knowing the same to be false."

In brief, the board of review determined that the draftsman of the specification intended to allege, via Article 134 of the Code, supra, a violation of 18 USC § 499, which renders criminal possession of a military pass or permit "with intent to defraud." Thereafter its members concluded that an "intent to deceive," as charged in the specification, was not equivalent to the "intent to defraud" proscribed by 18 USC § 499, and, therefore, that the specification did not allege an offense under Article 134 of the Code, supra.

Assuming arguendo—and only so—that an "intent to deceive" is not in all essential respects tantamount to an "intent to defraud," we nevertheless believe that the board of review erred. First of all, there is nothing to indicate that the draftsman of the specification in question intended to lay the charge under 18 USC § 499 through that portion of Article 134, supra, rendering cognizable by court-martial "crimes and offenses not capital, of which persons subject to this code may be guilty." It will be recalled that Article 134 consists of three distinct and separate parts. The first applies to "all disorders and neglects to the prejudice of good order and discipline in the armed forces"; the second extends to "all conduct of a nature to bring discredit upon the armed forces"; and the third is that mentioned above, "crimes and offenses not capital, of which persons subject to this code may be guilty." United States v. Snyder, (No. 409), 4 CMR 15, decided June 5, 1952; United States v. Herndon (No. 570), 4 CMR 53, decided July 17, 1952; United States v. Long (No. 464), 6 CMR 60, decided December 3, 1952. Our conclusion from a reading of the specification, together with the language of Article 134, supra, is quite the reverse of that reached by the board of review. No reference was made in the charge to a statutory basis for the allegation of a "crime or offense not capital"—although we need not now decide whether such a reference is prerequisite to a sufficient allegation of such an offense. The specification is palpably patterned on model specification number 138, Manual for Courts-Martial, United States, 1951, Forms—Charges and Specifications, App. 6c, page 490. We are quite certain that its draftsman was concerned primarily with the accused's universally reprehended conduct, and that he gave no thought to the third clause of Article 134, supra. United States v. Herndon, supra. He was surely thinking principally in terms of the first two clauses of that Article.

Viewing the charge in this light, there can be little doubt that deceitful possession by an accused of a false liberty card was conduct "to the prejudice of good order and discipline"—for it constituted a deliberate flaunting of the

---

[1] 1–52–S–367.

requirement that liberty cards be duly and properly authenticated, and of the authority of the officer designated to issue such documents. It is unnecessary to decide whether the act charged might at the same time have been "conduct of a nature to bring discredit upon the armed forces."

That phase of accused's argument predicated on the facts is readily answered by pointing out that he entered a plea of guilty to the specification in question, and persisted therein in the face of full advice as to its consequences —thereby effectively removing purely factual issues from the case. Also, departing somewhat from the issue certified, accused argues that the Code's Article 134, supra, as applied, is unconstitutional because of vagueness. The root of this argument, of course, is his contention that the conduct charged here is not so patently prejudicial to good order and military discipline that the defendant could have known in advance that he was violating the Article. We certainly believe—as noted above— that the conduct involved was obviously of that prejudicial nature. To put the question is to answer it in all reasonable minds.

The constitutionality of the Article, *as applied,* having been questioned by defense from the point of view of the certainty or definiteness of its proscriptions, we think it incumbent upon us to appraise it *on its face* and *generally* as well. Surely, the third clause of the Article is not vague. However, we cannot ignore the conceivable presence of uncertainty in the first two clauses. Assuming that civilian precedents in the field are applicable in full force to the military community, we do not perceive in the Article vagueness or uncertainty to an unconstitutional degree. The provision, as it appears in the Uniform Code, is no novelty to service criminal law. Compare Champlin Refining Company v. Corporation Commission, 286 US 210, 242–243, 76 L ed 1062, 1082, 52 S Ct 559; Connally v. General Construction Co., 269 US 385, 391–392, 70 L ed 322, 328, 46 S Ct 126. On the contrary, it has been a part of our military law

since 1775, and directly traces its origin to British sources. Winthrop's Military Law and Precedents, 2d ed., 1920 Reprint, page 720. It must be judged, therefore, not in vacuo, but in the context in which the years have placed it. Musser v. Utah, 333 US 95, 97, 92 L ed 562, 565, 68 S Ct 397. That the clauses under scrutiny have acquired the core of a settled and understandable content of meaning is clear from the no less than forty-seven different offenses cognizable thereunder explicitly included in the Table of Maximum Punishments of the Manual, supra, paragraph 127c, pages 224–227. Accordingly, we conclude that the Article establishes a standard "well enough known to enable those within . . . [its] reach to correctly apply them." Connally v. General Construction Co., supra, at 391; Hygrade Provision Co. v. Sherman, 266 US 497, 502, 69 L ed 402, 406, 45 S Ct 141; Omaechevarria v. Idaho, 246 US 343, 348, 62 L ed 763, 767, 38 S Ct 323; Nash v. United States, 229 US 373, 57 L ed 1232, 33 S Ct 780; International Harvester Co. v. Kentucky, 234 US 216, 223, 58 L ed 1284, 1288, 34 S Ct 853. A certain minimum element of indistinction remains which, in legislation of this entirely defensible character, can never be expunged completely, and must be dealt with on a case-by-case basis. See Krichman v. United States, 256 US 363, 367–368, 65 L ed 992, 994, 41 S Ct 514. This can be accomplished readily and properly in accordance with respectable analogues developed in courts of the civilian scheme. This latent and inescapable ambiguity cannot, in view of the recognized and measurable standard of the Article, be fatal, for "the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree." Nash v. United States, supra, at 377.

It is evident that our conclusion in this branch of the case is buttressed by the presence of impressive civilian authority involving legislation operative principally, or even wholly, in the civilian scene. However, the briefest of terminal references must be made to the presence of special and highly relevant considerations growing out of the essential disciplinary demands of the

military service. These are at once so patent and so compelling as to dispense with the necessity for their enumeration —much less their argumentative development.

The question certified is answered in the negative.

Chief Judge Quinn and Judge Latimer concur.