**Kenneth W. STOLTE, Jr., Donald F. Amick, Plaintiffs,**

v.

**Melvin R. LAIRD, Secretary of Defense, Stanley R. Resor, Secretary of the Army, Defendants.**

**Civ. A. No. 1764–70.**

United States District Court, District of Columbia.

Dec. 22, 1972.

Edward F. Sherman, Bloomington, Ind., Melvin L. Wulf and Eugene Z. DuBose, Jr., American Civil Liberties Union Foundation, New York City, Hope Eastman, Washington, D. C., Francis Heisler, Carmel, Cal., for plaintiffs.

Harold H. Titus, Jr., U. S. Atty. for the District of Columbia, E. J. Silbert, Oscar Altshuler, John H. Bayly, Jr., Peter R. Reilly and John T. Kotelly, Asst. U. S. Attys., for defendants.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

This action, initiated as a habeas corpus petition, seeks review of the constitutionality of plaintiffs' convictions of certain offenses by general military court-martial. The case is now before the Court on cross motions for summary judgment.

Plaintiffs are two former members of the United States Army, draftees, who were stationed in February, 1968, at Fort Ord, California.[1] That installation served, *inter alia*, as a basic training center for new troops. On or about the evening of February 21, 1968, plaintiffs distributed at Fort Ord about one hundred and fifty copies of a leaflet they had previously prepared expressing their disapproval of the war in Vietnam.[2]

1. Private Amick was assigned to the 52nd Army Band while Private Stolte was attached to the base hospital. Both had conduct and efficiency ratings of excellent prior to the events involved herein.

2. The leaflet read, in toto, as follows: "WE PROTEST. We Protest the war in Vietnam. We know that war will never bring about peace. Peace can only be obtained through peaceful means.

Plaintiffs were subsequently charged and convicted of violating Articles 134 [3] and 81 [4] of the Uniform Code of Military Justice [5] in that they publicly uttered a statement disloyal to the United States with design to promote disloyalty and disaffection among the troops and the civilian populace, and further that they had conspired to utter that statement. The disloyal statement in question is the leaflet described above.

> War cannot be rationalized, justified or condoned. If you want to fight for peace, stop killing people. The greatest contribution America can make toward world peace is to become a peaceful nation. The communist paranoia that we possess does not justify what we are doing to the country of Vietnam and its people. If a Communist power-play is being enacted, it must be thwarted in some other way.
>
> This stupidity of the war must end. Too many of our friends, not to mention the Vietnamese, are being killed for nothing, for the foolish game of politics. You as a human being with a free will have the right, if not the obligation, to speak out against these atrocities. You have the free will to refuse to be a part of this stupidity. Our Government is supposed to represent us, not rule us. Do the American people want this war? Then why do we have it. Why do we allow it to continue day after day?
>
> We are tired of it. We are tired of all the lies about the war, the false ideals, the empty reasoning. We see the reality of war; it is a pointless, meaningless, and tragic battle between two differing factions of human beings. Even the most degenerate of animals don't organize and institutionalize their quarrels. Man's emergence from the dark ages is long overdue.
>
> We are uniting and organizing to voice our opposition to this war. If you want to be constructive toward building a better world, then stop being destructive. If you really want to work for peace and freedom, then join us in our opposition. We are organizing a union in order to express our dissention and grievances. If interested and wish further information, then contact: Pvt. Ken Stolte, Jr., US 56 707 892, USAH, Ft. Ord, Calif.; PFC Daniel Amick, US 56 707 839, 52nd Army Band, Ft. Ord, Calif.".

No soldiers ever responded to the leaflet. Plaintiffs distributed the leaflets during

Plaintiffs were sentenced to dishonorable discharges, forfeiture of all pay and allowances, and confinement at hard labor for three years.[6] The convictions were affirmed by the Army Board of Review.[7] Petition for grant of review by the Court of Military Appeals was denied,[8] as was application to the Board for Correction of Military Records.[9]

Plaintiffs here challenge the constitutional validity of their convictions on

off-duty hours while dressed in civilian clothes. The leaflets were placed in service clubs, public telephone booths and Chaplains' offices and were also distributed to soldiers gathered outside a brigade chapel.

3. 10 U.S.C. § 934:
 Article 134. General Article
 Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

4. 10 U.S.C. § 881:
 Article 81. Conspiracy
 Any person subject to this chapter who conspires with any other person to commit an offense under this chapter shall, if one or more of the conspirators does an act to effect the object of the conspiracy, be punished as a court-martial may direct.

5. 10 U.S.C. § 801 et seq.

6. The sentences originally imposed at the court-martial were for four years' confinement at hard labor. These were subsequently reduced to three-year sentences by the convening authority. Maximum penalties would have been three years on each count, a total of six years for each defendant. (Manual of Courts-Martial, United States, 1969 ed.: Table of Maximum Punishments. The 1969 Manual did not control at times here involved, but is identical to the earlier Manual in all respects here material unless otherwise indicated.)

7. 40 C.M.R. 720 (1969).

8. 40 C.M.R. 327 (1969).

9. Plaintiffs were charged on February 26, 1968. Their court-martial took place in

two interrelated but distinct grounds: alleged vagueness in violation of the due process clause of the Fifth Amendment, and alleged overbreadth infringing on plaintiffs' rights of free speech and expression protected by the First Amendment. These contentions will be considered separately. They were raised and rejected before the military tribunals. Specifically, plaintiffs seek (1) a declaratory judgment that their court martial convictions are invalid as violative of the First and Fifth Amendments; (2) restoration of all back-pay and benefits of which they were deprived by virtue of the convictions; and (3) appropriate correction of their military records. The constitutional issues will be considered here only in regard to the Article 134 convictions for uttering disloyal statements. The Article 81 convictions for conspiracy to violate Article 134 were general counts obviously dependent here on the validity of the Article 134 convictions.

*Jurisdiction*

■■ It is well settled that federal civilian courts have jurisdiction to review by writ of habeas corpus the validity of a court-martial conviction. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953).[10] There is no contention here that this Court lacks jurisdiction in the present case. Although plaintiffs were not actually in custody at the time this action was instituted, they were then subject to conditions of parole. Further, their dishonorable discharges resulted from the convictions here in issue. It is settled in this circuit that even absent a habeas corpus petition court-martial proceedings are subject to review by way of declaratory judgment or other form of civil action provided that the scope of review is confined to that comparable to habeas corpus scrutiny. Kauffman v. Secretary of Air Force, 135 U.S.App.D.C. 1, 415 F.2d 991 (1969).[11] Kauffman further held that the standard of review to be applied was that "military rulings on constitutional issues conform to Supreme Court standards, unless it is shown that conditions peculiar to military life require a different rule."[12] It is in this light that plaintiffs' military convictions must

May, 1968. Review by the convening authority was completed August 13, 1969, affirming the convictions but reducing the sentences. ' Affirmance by the Army Board of Review was dated May 16, 1969. The Court of Military Appeals denied further review on August 21, 1969. The Board for Correction of Military Records denied plaintiffs' applications on November 6, 1969.

The present action was commenced June 12, 1970, though for undisclosed reasons the motion for summary judgment was not filed until May, 1972. While the record is unclear as to exactly how long plaintiffs were actually imprisoned, it appears that they were confined from August 13, 1968, through September 24, 1969, when they were released on parole. Parole status terminated in May, 1971.

10. *Cf.* Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950).

11. Cert. denied 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505, rehearing denied 397 U.S. 1031, 90 S.Ct. 1255, 25 L.Ed.2d 546 (1970). *Accord* Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965); Gallagher v.

Quinn, 124 U.S.App.D.C. 172, 363 F.2d 301 (1966) cert. denied 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966); Homcy v. Resor, 147 U.S.App.D.C. 277, 455 F.2d 1345 (1971); Owings v. Sec. of Air Force, 145 U.S.App.D.C. 76, 447 F.2d 1245, 1261 (1971). *See also* Smith v. McNamara, 395 F.2d 896 (10th Cir. 1968) cert. denied 394 U.S. 934, 89 S.Ct. 1211, 22 L.Ed.2d 466 (1969), Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971), Angel v. Laird, 429 F.2d 892 (10th Cir. 1970). *But see* Davies v. Clifford, 393 F.2d 496 (1st Cir. 1968), United States v. Carney, 406 F.2d 1328 (2d Cir. 1969), Ragoni v. United States, 424 F.2d 261 (3d Cir. 1970), Thompson v. Parker, 308 F.Supp. 904 (M.D.Pa.1970).

12. 415 F.2d 991 at 997. Deference is clearly due to military tribunals which have earlier considered the case. As to the scope of that deference, however, *compare* Noyd v. Bond, 395 U.S. 683, 694, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969) with O'Callahan v. Parker, 395 U.S. 258, 266, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). *See also* Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 186–88 (1962).

be examined for their conformity to prevailing constitutional standards.

### Vagueness

It should be noted at the outset that plaintiffs are not here challenging Article 134 as unconstitutionally vague on its face.[13] They attack the facial vagueness of the "specifications" [14] enunciated in the charges against them.[15]

█ The constitutional standard for vagueness is clear and well established. A criminal law must "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). The due process clause of the Fifth Amendment is offended by anything less than such fair notice.

13. The constitutionality of Article 134, per se, in light of a charge of facial vagueness is presently under advisement in the United States Court of Appeals for the District of Columbia. Avrech v. Secretary of Navy, Docket No. 71–1841, argued Dec. 5, 1972. Although the Court of Military Appeals considered and rejected the vagueness attack on Article 134 years ago, United States v. Frantz, 2 U.S.C.M.A. 161 (1953), the question is far from settled. See generally O'Callahan v. Parker, 395 U.S. 258, 266, 89 S.Ct. 1683, 23 L.Ed. 2d 291 (1969); Levy v. Parker, 396 U.S. 1204, 1205, 90 S.Ct. 1, 24 L.Ed.2d 25 (1969); Levy v. Corcoran, 128 U.S.App. D.C. 388, 389 F.2d 929 (1969) stay denied 387 U.S. 915, 87 S.Ct. 2026, 18 L.Ed. 2d 968, cert. denied 389 U.S. 960, 88 S.Ct. 337, 19 L.Ed.2d 369 (1967); Everett, Article 134, Uniform Code of Military Justice—A Study in Vagueness, 37 N.C.L. Rev. 142 (1959); Gaynor, Prejudicial and Discreditable Military Conduct: A Critical Appraisal of the General Article, 22 Hastings L.J. 259 (1971); Weiner, Are the General Military Articles Unconstitutionally Vague?, 54 A.B.A.J. 357 (1968); Note, The Discredit Clause of the U.C.M.J.: An Unrestricted Anachronism, 18 U.C.L.A.L.Rev. 821 (1971); Note, Taps for the Real Catch–22, 81 Yale L.J. (1972); Note, Uniform Code of Military Justice—General Article Void for Vagueness?, 34 Neb.L.Rev. 518 (1955).

14. The Manual for Courts-Martial, United States, 1969, lists at least seventy-nine separate offenses cognizable under Article 134. These offenses range from "Abusing a Public Animal" to "Wrongful Cohabitation." The offense in each case is explained by a "specification," as set forth in the Manual for Courts-Martial. The term "specification" as used throughout this opinion means an offense under military law as developed and defined by military custom and precedent. A succinct restatement of the elements of each offense can be found in the list of "specifications" set forth in the Manual. There is doubt, however, that the Manual, which is promulgated by the Executive branch of

the government, could legally provide an authoritative definition of crimes under a legislative enactment. See generally Note, Uniform Code of Military Justice—General Article Void for Vagueness?, 34 Neb. L.Rev. 518, 527–29 (1955); Note, Taps for the Real Catch-22, 81 Yale L.J. 1518, 1523–23 (1972).

15. The charges against the plaintiffs read as follows:

Charge I: Violation of the Uniform Code of Military Justice, Article 134. Specification: In that [the plaintiffs] did, at Fort Ord, California, on or about 21 February 1968, with design to promote disloyalty and disaffection among the troops and the civilian populace, publicly utter the following statement, to wit: [followed by the text of the leaflet, as set forth in note 2, supra] or words to that effect, which statement was disloyal to the United States.

Charge II: Violation of the Uniform Code of Military Justice, Article 81. Specification: In that [the plaintiffs] did, at Fort Ord, California, on or about 21 February 1968, conspire with [each other], to commit an offense under the Uniform Code of Military Justice, to wit: Publicly uttering disloyal statements, and in order to effect the object of the conspiracy the [plaintiffs] did publish and distribute leaflets urging the formation of a union to organize to voice their opposition to the war.

The government's position with respect to the nature and authority of a "specification" is unclear. If the government is contending that the specification is informational only and that its vagueness cannot affect the validity of a resulting conviction, it would be necessary for the Court to evaluate the constitutionality of the Art. 134, per se, in regard to "disloyal statements" and to the facts of this case. In light of the result reached, the Court has chosen to interpret the ambiguity in the government's position in such a way as to limit the scope of its constitutional holding to the specifications involved in this case.

The Supreme Court has repeatedly indicated that the purposes of its constitutional holdings on this point are twofold: to assure adequate notice to the potential violator that the contemplated conduct is proscribed and to minimize the possibility of arbitrary and discriminatory enforcement of the law.[16] While the need for "ascertainable standards of guilt" [17] is even greater in a context involving First Amendment rights, that aspect of the case will be deferred until the later discussion of overbreadth and the First Amendment.

■ Having recognized the standard generally applicable in evaluating alleged statutory vagueness it is necessary to examine whether that same statutory standard is applicable to military law or whether conditions peculiar to military life require a different rule. The Court of Military Appeals has aided in this task by its acceptance of general Supreme Court standards on vagueness without indicating any need for a departure from those standards in the name of military necessity. United States v. Howe, 17 U.S.C.M.A. 165, 168–69 (1967).[18] The Government here concedes that the proper standard is one which would not "leave them bereft of *fair notice* as to how to conform themselves or their behavior to the demands of post life." [19] The Court likewise has been unable to discern a rationale which would properly dispense with the necessity of fair notice of proscribed conduct, although a determination as to what constitutes fair notice in a given context should be subject to consideration of all

16. Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ; Papachristou v. City of Jacksonville, 405 U.S. 156, 168–171, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) ; Kunz v. New York, 340 U.S. 290, 293, 71 S.Ct. 312, 95 L.Ed. 280 (1951) ; Thornhill v. Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940) ; Cantwell v. Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) ; Herndon v. Lowry, 301 U.S. 242, 263, 57 S.Ct. 732, 81 L.Ed. 1066 (1937) ; see also United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954) ; Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939) ; Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926) ; Cline v. Frink Dairy Co., 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1927) ; United States v. Cohen Grocery Co., 255 U.S. 81, 89, 41 S.Ct. 298, 65 L.Ed. 516 (1921).

17. Winters v. New York, 333 U.S. 507, 515, 68 S.Ct. 665, 92 L.Ed. 840 (1948). "(s)tandards of permissible statutory vagueness are strict in the area of free expression." N. A. A. C. P. v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963).

18. The Court of Military Appeals in *Howe* quoted from several Supreme Court opinions on the subject of vagueness with general approval without indicating which opinion it believed spelled out the test most applicable to the military. The court gave no indication, however, that independent military considerations would enter its determinations on vagueness. *Cf.* United States v. Frantz, 2 U.S.C.M.A. 161, 163 (1953) where the court "assume(d) that civilian precedents in the field (of vagueness) are applicable in full force to the military." *Accord* United States v. Sadinsky, 14 U.S.C.M.A. 563 (1964), United States v. Barker, 26 C.M.R. 838 (Coast Guard Board of Review, 1959), United States v. McLeod, 18 C.M.R. 814 (Air Force Board of Review, 1954).

Some analogous civil precedent is available in the area of due process and free speech as applicable to government employees. The First Amendment rights of government employees in a job-related context are limited. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Fair notice of proscribed conduct can "rest on fair implication," Carter v. United States, 132 U.S.App.D.C. 303, 407 F.2d 1238, 1246 (1968), but where the proscription involves First Amendment rights, strict standards of express notice apply. Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822, 834 (1968), modified on other grounds, 138 U.S.App.D.C. 38, 425 F.2d 469, vacated on other grounds, 138 U.S.App.D.C. 41, 425 F.2d 472 (1969).

*See also* the opinion of the Court of Appeals in Burns v. Lovett, 91 U.S.App.D.C. 208, 202 F.2d 335, 340–341 (1952) aff'd sub nom. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953).

19. Government brief, p. 5.

the circumstances, including military necessity.

■ The Court of Military Appeals has held that Article 134 of the UCMJ is not void for vagueness on its face. United States v. Frantz; 2 U.S.C.M.A. 161 (1953). There the Court held that Article 134

> must be judged, . . . not in vacuo, but in the context in which the years have placed it. . . . That the clauses under scrutiny have acquired the core of a settled and understandable content of meaning is clear from the no less than forty-seven different offenses cognizable thereunder explicitly included in the Table of Maximum Punishments of the Manual [for Courts-Martial, 1951]. . . . Accordingly, we conclude that the Article establishes a standard 'well enough known to enable those within . . . [its] reach to correctly apply them.' [20]

The specification here under attack is one of the cited offenses cognizable under Article 134. This is apparently one of very few cases which have launched frontal attacks on a specification, as distinguished from an attack on the general article under which the charges are lodged.[21] The Court believes this approach to be well-founded, however, for each of the now more than seventy separate specifications under Article 134 is in effect a separate offense and each

specification, as well as the general article, must on its own terms pass constitutional muster. *Frantz* involved a specification (possession of a false pass) with none of the inherent ambiguity of the "disloyal statement" specification. While military usage, regulations and case law may be sufficient to provide fair notice of proscribed conduct with regard to certain specifications, those sources must be examined with regard to each specification to be certain that "the clauses under scrutiny have acquired the core of a settled and understandable content of meaning" and therefore do in fact provide fair notice of the proscribed conduct.

With fair notice as the threshold requirement, the Supreme Court has repeatedly struck down statutes where no definition or standards were enunciated to clarify the scope of inherently ambiguous language.[22] This Court is of the opinion that the word "disloyal" is inherently ambiguous and ill-suited to proscriptive use, especially where First Amendment rights are involved. It is not a word of easily defined meaning and common understanding such that no further standard is necessary. "Measures which purport to define disloyalty must allow [knowledge of] what is and is not disloyal." Baggett v. Bullitt, 377 U.S. 360, 380, 84 S.Ct. 1316, 1327, 12 L. Ed.2d 377 (1964). Just as "(c)onduct that annoys some people does not annoy others,"[23] so also that which is disloyal-

---

**20.** 2 U.S.C.M.A. 161, 163 (1953). *Accord* United States v. Sadinsky, 14 U.S.C.M.A. 563 (1964).

**21.** Several cases involving this same disloyal statement specification have involved general vagueness attacks which have been defeated by citation to the point that the general article per se is not void for vagueness. *See, e. g.,* Avrech v. Secretary of Navy, CA 3664-70, D.C.D.C. (Oct. 21, 1971) ; Levy v. Parker, 316 F.Supp. 473, M.D.Pa. (1971). In U. S. v. Harvey, 40 C.M.R. 941 (1969) rev'd on other grounds, 19 U.S.C.M.A. 539 (1970) the Board of Review summarily disposed of the argument that the disloyal statement specification is unconstitutionally vague :
> we . . . think that the word "disloyal" when given its ordinary meaning

> and used within the context of the . . . form specification clearly delineates the offense of making disloyal statements and thus provides the serviceman with "fair notice" of the offense proscribed by the specification.
> 40 C.M.R. at 949–50.

**22.** Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), Lanzetta v. New Jersey, 306 U.S. 451, 455, 59 S.Ct. 618, 83 L.Ed. 888 (1939), Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948).

**23.** Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).

ty to some may seem to others the highest form of patriotism. The proscription is "not fenced in by the text of the statute or by the subject matter so as to give notice of conduct to be avoided."[24] This Court is unable to perceive any "ascertainable standard or guideline superimposed on the regulation in the context of the military environment"[25] and has been offered no authorities, indeed nothing at all, from which even the outlines of such an "ascertainable standard" might be drawn. The "military environment" alone certainly cannot be invoked as a catch phrase to bypass the standards of fair notice so often set forth by the Supreme Court as constitutionally required.

■ Assuming *arguendo* that the military has a valid interest in proscribing *some* speech, it should be able to draft the proscription in terms substantially more informative, than the blunderbuss approach employed in the disloyal statement specification. While the fine lines of constitutional law involved may have to await judicial clarification, this Court believes that the Constitution requires that the military define with greater precision the types of speech to be proscribed under Article 134 in the interest of good order and discipline.[26]

The Government's argument that "no reasonable man could have been left guessing beforehand as to the position of that close but vivid boundary between 'rhetoric and disloyalty to the United States' "[27] cites United States v. Harvey, 19 U.S.C.M.A. 539, 544 (1970). Yet *Harvey* also stands for the proposition that "(d)isagreement with, or objection to, a policy of the Government is not necessarily indicative of disloyalty to the United States."[28] This Court is left guessing even after the fact whether the statement is rhetoric or disloyalty, for nowhere has the Court been able to discover what *is* indicative of disloyalty to the United States. The Government contends that the leaflet was a "call to arms" in resistance to national military objectives and a disavowal of allegiance to this country in its pursuit of military policy abroad. Yet plaintiffs were not charged with disobeying orders or counseling others to do so. They were charged with uttering disloyal statements and it must be shown that plaintiffs had fair notice that their statements could be considered disloyal to the United States. The leaflet obviously sought support in expressing opposition to the war in Vietnam, but the Government has yet to demonstrate that this is the equivalent of disloyalty. Even if the specific words here involved, however, were clearly "disloyal", plaintiffs would still be able to successfully attack the specification as vague on its face.[29] Ar-

24. Winters v. New York, 333 U.S. 507, 540, 68 S.Ct. 665, 682, 92 L.Ed. 840 (1948) (Frankfurter, J. dissenting).

25. Schneider v. Laird, 453 F.2d 345, 346 (10 Cir. 1972) cert. denied 407 U.S. 914, 92 S.Ct. 2436, 32 L.Ed.2d 690 (1972).

26. Some such more detailed proscriptions are contained in the UCMJ. Article 89 prohibits "disrespect" to superior officers. While "disrespect" is hardly a term of precision, it is nowhere near the ambiguity of "disloyal." Similarly, Articles 77, 90 and 92 prohibit encouraging disobedience to orders, another much more clear prohibition. Indeed, the military is well known for its ability to promulgate detailed regulations on many subjects much less important than the First Amendment.

27. Government brief, p. 7.

28. 19 U.S.C.M.A. 539, 544 (1970).

29. "When First Amendment rights are involved" (a)lthough a statute may be , neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And if the law is found deficient in one of these respects, it may not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute. Dombrowski v. Pfister, 380 U.S. 479, 491–492, [85 S.Ct. 1116, 1123–1124, 14 L.Ed.2d 22] (1965). The statute, in effect, is stricken down on its face. This result is deemed justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights." Coates v. City of Cincinnati, 402 U.S. 611,

guments directed to the specific contents of this leaflet, then, do not answer the challenge of vagueness on the face of the specification.

The second vice of vagueness in that it allows for arbitrary enforcement is equally present here. Unfettered discretion to define and punish "disloyalty" on an ad hoc basis is conferred upon military authorities. This Court fails to see how military officials could adequately determine what is a disloyal statement and make that determination within constitutionally permissible limits and still be subject to effective judicial scrutiny.

620, 91 S.Ct. 1686, 1691, 29 L.Ed.2d 214 (1971) (White, J., dissenting). *Cf.* United States v. National Dairy Products Corp., 372 U.S. 29, 36, 83 S.Ct. 594, 9 L. Ed.2d 561 (1963) ; Gooding v. Wilson, 405 U.S. 518, 520–521, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

30. Papachristou v. City of Jacksonville, 405 U.S. 156, 170, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) quoting Thornhill v. Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). *Cf.* Schact v. United States, 398 U.S. 58, 63, 90 S.Ct. 1555, 1559, 26 L.Ed.2d 44 (1970) : a law "which leaves Americans free to praise the war in Vietnam but can send persons . . . to prison for opposing it, cannot survive in a country which has the First Amendment."

31. The Court is further convinced of the vagueness present here by decisions of the Court of Military Appeals handed down after the Court had denied review in the present case. While not controlling here, they are illustrative of the possibilities for clouded interpretation and arbitrary application of the disloyal statement specifications. United States v. Gray, 20 U.S.C. M.A. 63 (1970), involved a disloyal statement which was quite similar in part to the statement involved here :

. . . . .

"What does all this have to do with the war in Vietnam? The Marines, the military in general, are teaching men to respond like animals, to kill without question and on command, and in Vietnam without reason, without cause. . . . we have reason to believe our war there is a huge mistake made possible in part by inhumane and dictatorial practices within the military. We can no longer cooperate with these practices or with the war in Vietnam. We are not deserting ; we are simply taking a stand to help others like us.

"Where, as here, there are no standards governing the exercise of the discretion granted by the ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law. It furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.' " 30

Accordingly, this Court finds the "disloyal statement" specification under Article 134 of the Uniform Code of Military Justice to be unconstitutionally vague.31

. . . . .

This is where we stand, and we hope that other men in the Armed Forces who know that we speak the truth will stand with us.

20 U.S.C.M.A. at 70. The Court of Military Appeals was "left with an abiding conviction that it does not constitute a declaration of disloyalty to the United States." 20 U.S.C.M.A. at 68. Yet the Court did not explain the source of the abiding conviction or how it determined what was and what was not disloyalty to the United States. It had no trouble finding the statement disloyal to the Marine Corps, but found lacking "disloyalty to the United States as a political entity, which is a requisite of the offense charged." *Id.*

A second statement was involved in *Gray,* but was found to be disloyal because "reasonable persons could conclude that the statement was a disavowal of allegiance to the United States." *Id.* at 67. To this Court, allegiance is synonymous with loyalty, and equally as nebulous a concept. "Violation of allegiance owed to the nation as a sovereign political entity" is little more informative than "disloyalty" and fails to clarify the line between permitted and proscribed. The Court of Military Appeals has thus simply substituted the question "what is a violation of allegiance?" for "what is disloyalty?" and been content to answer the question only on the facts of a given case without enunciating any clear standards for establishing disloyalty or determining when disloyalty is against the United States as a sovereign entity.

In United States v. Harvey, 19 U.S.C. M.A. 539, 543–44, (1970) the Court said: "(s)ome statements may be so explicit in meaning as to support a conclusion from their language that they are disloyal to the United States. Other statements require

### Overbreadth

█ Plaintiffs contend that the disloyal statement specification is unconstitutionally overbroad, both on its face and as applied to them. A law is overbroad "if in its reach it prohibits constitutionally protected conduct." [32] Plaintiffs contend that the reach of the specification abridges freedom of speech and expression protected by the First Amendment.

A threshold question must be the extent to which the First Amendment applies to members of the military service. The Court of Military Appeals has long recognized that the amendment does apply to military personnel [33] but has also indicated that military free speech is not as broad as that accorded civilians, being subject in the military to special limitations in the interests of good order and discipline. [34] This Court accepts the standard set forth by the Court of Military Appeals and will proceed to examine the issue of overbreadth on the presumption that speech "palpably prejudicial to good order and discipline" [35] may validly be proscribed consistent with the First Amendment.

The disloyal statement specification challenged here [36] has three basic elements: (1) a public utterance, which is (2) disloyal to the United States, and uttered with (3) design to promote dis-

interpretation; and their real meaning may be discernible only in the circumstances of their utterance." But the Court failed to indicate what explicit language was disloyal or what circumstances are relevant. *See also* United States v. Priest, 21 U.S.C.M.A. 564 (1972).

While implications as to standards might be drawn from the factual patterns involved in the cases, this approach would be of little help to the soldier who is entitled to advance "fair notice that his contemplated conduct is forbidden by the statute." United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). As to the vagueness of "allegiance" see Baggett v. Bullitt, 377 U.S. 360, 371–72, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

32. Grayned v. City of Rockford, 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). *Cf.* Coates v. City of Cincinnati, 402 U.S. 611, 614–616, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), U. S. v. Robel, 389 U.S. 258, 266, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967), Keyishian v. Board of Regents, 385 U.S. 589, 608–609, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

33. United States v. Voorhees, 4 U.S.C.M.A. 509, 521 (1954), United States v. Howe, 17 U.S.C.M.A. 165, 170–178 (1967), United States v. Gray, 20 U.S.C.M.A. 63, 66 (1970), United States v. Daniels, 19 U.S.C.M.A. 529, 532 (1970), United States v. Priest, 21 U.S.C.M.A. 564, 570 (1972).

34. United States v. Priest, 21 U.S.C.M.A. 564, 570 (1972), United States v. Gray, 20 U.S.C.M.A. 63, 66 (1970), United States v. Harvey, 19 U.S.C.M.A. 539, 542–

544 (1970). "(T)he rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty." Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953). *See generally*, Levy v. Parker, 396 U.S. 1204, 1205, 90 S.Ct. 1, 24 L.Ed.2d 25 (1969); Cortright v. Resor, 325 F.Supp. 797 (E.D.N.Y. 1971) reversed 447 F.2d 245 (2d Cir. 1971) cert. denied, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972); Dash v. Commanding General, 307 F.Supp. 849 (D.S.C.1969) aff'd. 429 F.2d 427 (4th Cir. 1970) cert. denied 401 U.S. 981, 91 S.Ct. 1192, 28 L.Ed.2d 333 (1970); Emerson, Toward a General Theory of the First Amendment, 72 Yale L.J. 877 (1963); Kester, Soldiers Who Insult the President: An Uneasy Look at Article 88 of the Uniform Code of Military Justice, 81 Harv.L.Rev. 1697 (1968); Lewis, Freedom of Speech, An Examination of the Civilian Test for Constitutionality and Its Application to the Military, 41 Mil.L.Rev. 55 (1968); Sherman, The Military Courts and Servicemen's First Amendment Rights, 22 Hastings L.J. 325 (1971); Note, Dissenting Servicemen and the First Amendment, 58 Geo.L.J. 534 (1970).

35. United States v. Priest, 21 U.S.C.M.A. 564, 569 (1972). Such prejudice must be palpable "not merely in an indirect and remote sense." *Id.* *See also* United States v. Gray, 20 U.S.C.M.A. 63, 68 (1970): "reasonably direct and palpable prejudice to good order and discipline." *Cf.* United States v. Sadinsky, 14 U.S.C.M.A. 423 (1964).

36. See note 15, *supra.*

loyalty and disaffection among the troops and the civilian populace.[37] In construing these elements the Court of Military Appeals has held that (1) the alleged disloyalty must be to the United States as a sovereign political entity [38] and that (2) the utterance must have a palpable and direct effect on good order and discipline.[39] It is not necessary that the utterance be successful in provoking disloyalty,[40] and "a declaration of personal belief" can be found to have the requisite intent and effect.[41] It is in this light that the Court will proceed to examine the challenge for overbreadth.[42]

Even where concededly important government interests are involved "it has become axiomatic that '[p]recision of regulation must be the touchstone in an area so closely touching our most precious freedoms.' NAACP v. Button, 371 U.S. 415, 438 [83 S.Ct. 328, 340, 9 L.Ed.2d 405] (1963) . . ." U. S. v. Robel, 389 U.S. 258, 265, 88 S.Ct. 419, 424, 19 L.Ed.2d 508 (1967). It is not necessary to "balance" the substantial competing interests involved where a decision can be reached on the scope of the means chosen by the Government to achieve an admittedly legitimate goal.[43] Here the goal is military order and discipline. The disloyal statement specification concededly reaches some speech which would clearly be to the prejudice of military order and validly subject to prohibition. But the specification may also reach many statements not validly subject to military proscription, and therein lies its fatal flaw of overbreadth. The overbreadth lies, as does the vagueness, in the ambiguity of the word disloyal. The soldier is put at his peril that a statement, especially a controversial or political statement, may be taken by some, including a jury, to be disloyal and thus designed to encourage disloyal thoughts or "disaffection." "When one must guess what conduct or utterance may lose him his position, one necessarily will 'steer far wider of the unlawful zone . . .' . . . For '[t]he threat of sanctions may deter . . . almost as potently as the actual application of sanctions.' . .. . The danger of that chilling effect upon the exercise of vital First Amendment rights must be guarded against by sensitive tools which clearly inform . . . what is being proscribed." Keyishian v. Board of Regents, 385 U.S. 589, 604, 87 S.Ct. 675, 684, 17 L.Ed.2d 629 (1967) (citations omitted).

Military personnel retain their basic rights and freedoms as American citizens, subject only to those limitations necessary in the interests of good order and discipline, the unique components of

37. The words "and the civilian populace" are an optional part of the form specification contained in the Manual for Courts-Martial, apparently to be included in the specification at the discretion of prosecuting authorities depending on the circumstances of the alleged offense. In light of the result reached, the Court does not find it necessary to focus on these words as used in this case. The Court has strong doubts, however, whether there is *any* legitimate military interest in the loyalties and affections of the civilian populace.

38. United States v. Harvey, 19 U.S.C.M.A. 539, 544 (1970).

39. See note 35, *supra.*

40. United States v. Priest, 21 U.S.C.M.A. 564, 571 (1972). *Cf.* United States v. Daniels, 19 U.S.C.M.A. 529, 536 (1970).

41. United States v. Gray, 20 U.S.C.M.A. 63, 67–68 (1970).

42. As to judging statutory overbreadth as construed, *see* Gooding v. Wilson, 405 U.S. 518, 520–523, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), Coates v. City of Cincinnati, 402 U.S. 611, 613, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), Chaplinsky v. New Hampshire, 315 U.S. 568, 573, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). It should be noted that the constructions discussed above (notes 38–41, *supra*) were issued after the events in question in this case, though this is immaterial in judging the overbreadth of the specification on its face.

43. United States v. Robel, 389 U.S. 258, 268 n. 20, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967).

their specialized environment. They retain their political freedoms, their right to hold their own views on all political matters. It is not inconceivable, indeed it is probable, that United States military policies, both foreign and domestic, will often become political issues. The Vietnam war has unfortunately been one of the great political issues of our time. Yet is one of the highest values of our society that all citizens are able to examine all issues, come to their own conclusions, and freely discuss and express their views. It is not suggested that soldiers can hold political discussions on the drill field or elsewhere while on duty, but in their off-duty hours, in barracks "bull sessions", and even in leaflets,[44] they can express their views on political issues, so long as they do not directly prejudice good order and discipline. While soldiers can be compelled to obey orders, they can not be compelled to an ideological orthodoxy prescribed by their superior officers.

Military discipline is a unique phenomenon. This Court recognizes the military interest in the morale and motivation of the troops. It is further recognized that the military is a specialized organization, one whose efficiency may at times be vital to the national interest. The problem is to reconcile this interest with the First Amendment rights of the participants.

Accepting the view of the Court of Military Appeals, as this Court has, that the First Amendment freedom of speech applies to the military only to the extent that the speech does not directly prejudice good order and discipline, that limited standard of freedom must be vigorously guarded as a precious constitutional right. Strictly speaking, every statement critical of a military program or policy can have an effect on attitudes and morale, which can arguably affect in turn order and discipline. Yet the argument simply cannot be accepted consistent with even a limited First Amendment freedom that military authorities can, therefore, punish all statements deemed to adversely affect "motivation" or "morale" in a general sense. For this would render meaningless even that limited freedom of speech recognized by the military as a soldier's constitutional right. Indeed, Article 134 by its terms requires prejudice to good order and discipline, not simply to a generalized "morale" of service. Order and discipline are essentially terms referring to conduct, while morale refers to thoughts and attitudes. Conduct and motivation are obviously interrelated, but the distinction is present and it must be preserved. Article 134 would be too broad, and the First Amendment too narrow, if all words and deeds of a soldier were subject to punishment on the grounds that they adversely affected the intangible morale of the service.

The classic statement of the opposite view was expressed by Judge Latimer in United States v. Voorhees, 4 U.S.C.M.A. 509, 533 (1954):

> No man willingly lays down his life for a national cause which he is led to believe is unsound or unjust. Yet implicit in military life is the concept that he who so serves must be prepared to do so. If morale and discipline are destroyed, our forces cannot be trained adequately, and the nation must necessarily fail in battle.

The difficulty with this approach is that it proves too much. This rationale would support restriction of *all* dissent on war aims, even by civilians and elected officials. Yet clearly the First Amendment forbids that. To justify restrictions on military personnel that do not apply to civilians, it would be necessary to show a peculiar harm to morale and discipline specially resulting from the fact that anti-war views were expressed by a soldier rather than a civil-

---

44. The right to leaflet, however, might be subject to other valid military regulation. *See* Dash v. Commanding General, 307 F.Supp. 849 (D.S.C.1969) aff'd. 429 F. 2d 427 (4th Cir. 1970). Plaintiffs here, however, were not charged with violation of any such regulation.

ian. While this might be possible in some contexts, the Court is of the view that no such special harm has been or could be shown in the present case. The events here in question took place on a major military installation in the United States. Plaintiffs were assigned to a hospital and a band, respectively. There was easy access and communication to the civilian world, where anti-war dissent was common and increasingly vehement at the times involved herein. Further, this approach presumes that the mere hearing of anti-war sentiments will undermine morale. It is a disservice to our military personnel to presume that they would be so easily swayed rather than allowing for the possibility that they might readily reject the folly of the views expressed and become strengthened in the view that the military course is just. Judge Latimer's view must also be appraised in light of a realistic analysis of the military role in modern warfare. In theory all must be prepared to fight and die, if necessary. But in fact large percentages of our forces perform service and support functions where the attitude of the enlisted man toward a war is of marginal importance. Further, it must be remembered that any direct disobedience to orders, refusal of duty, or interference with military operations can be properly punished under other valid provisions of the UCMJ. It is for these reasons that the Court finds it necessary to distinguish a possible effect on morale from a demonstrable effect on discipline.

▇▇▇▇▇ Conceding a legitimate military interest in proscribing some speech, that proscription must be narrowly drawn. ". . . Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." N. A.A.C.P. v. Button, 371 U.S. 415, 432–433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). Where there is a clear danger of disorder or direct prejudice to military discipline, speech, even on political or controversial issues, can be proscribed under Article 134. The proscription must be specific and informative enough to avoid any chilling effect on speech not justifiably proscribed and also to avoid the vice of vagueness. The direct infringement of free speech thus recognized is consistent with the limited scope of First Amendment rights in the military, as discussed above, and is not unlike the infringement impliedly recognized in Tinker v. Des Moines School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), as permissible and essential to preserve the unique character of a specialized environment. It is the prejudice to order or discipline, however, rather that any characterization of "disloyalty" that justifies the restriction on free speech. A soldier certainly does not have the right to dispute the war aims of the United States when ordered to take a certain hill in the midst of combat. Here the prejudice to military discipline is clear. What is necessary is for the proscriptions to be narrowly and specifically drawn to reach such situations without chilling or curtailing the freedoms of all military personnel, as citizens, to express controversial and even militarily unpopular sentiments.[45]

---

45. Assuming that the three "examples" of disloyal statements cited in the Manual for Courts-Martial (¶213 [f] 5) are authoritative, they do not redeem the overbreadth here but simply confound it. "Praising the enemy" easily embraces even a grudging statement of respect for the perseverance or wise tactics of the enemy. A frank recognition that in a given instance the enemy outsmarted or outfought our forces would be suspect. And most relevant here, a statement based on political or moral issues and judgments to the effect that the enemy's cause may be more meritorious than our own falls in a twilight zone. "Attacking the war aims of the United States" could embrace a statement that our aims are not high enough, that our conduct of the war is too limited, as well as an abstract political view that our war aims in general are simply wrong. "Denouncing our form of government" might mean that a soldier cannot charge that Congress is un-

The "design" to promote disloyalty required by the disloyal statement specification does not aid at all in narrowing the overbreadth found there. Most statements are intended to promote some thoughts on the part of the listener, and such design or intent is implicit in most forms of human communication. If the communication itself is deemed to be disloyal, it easily follows that it was intended to promote disloyal thoughts among the listeners. Thus, the finding of the requisite intent can be, and has been,[46] established simply by virtue of the fact that the statement found to be disloyal was communicated to other military personnel. The intent element of the specification is thus deprived of any independent vitality and made to turn upon the finding of whether the initial statement was disloyal.

Recognizing that the unique environment of the military necessitates good order and discipline, the requirement that any "disloyal" statement directly prejudice that good order to be punishable might go far toward redeeming the overbreadth of the proscription if it were strictly interpreted and applied, as e. g. by a "clear and present danger" standard.[47] "Undifferentiated fear or apprehension" however, " . . . is not enough to overcome the right to freedom of expression." Tinker v. Des Moines School District, 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969). Yet, as interpreted and applied by Court of Military Appeals, this requirement for direct prejudice to good order has been allowed only a very limited scope. As long as the evidence does not "foreclose all possibility of successful promotion of disloyalty and disaffection," it is "sufficient to support a finding of reasonably direct prejudice to good order and discipline." United States v. Gray, 20 U.S.C.M.A. 63, 68 (1970).[48] Such application of the requirement that prejudice to good order be direct and palpable is tantamount to a *per se* approach justifying a finding of prejudice to good order upon a finding that a statement was disloyal and therefore encouraged disloyalty or disaffection. Having already found those terms unconstitutionally vague and overbroad, it is clear that the direct prejudice requirement now made to turn upon them must likewise fail to redeem the overbreadth.

In addition to challenging the disloyal statement specification as overbroad on its face, plaintiffs have also challenged its validity as applied to them. The Court agrees, but will comment only briefly in light of the holding of facial overbreadth.

Plaintiffs here uttered a statement calling for other servicemen to join them to "voice our opposition" to the war in Vietnam. They did this in off-duty hours and there is no evidence that

---

responsive or unrepresentative and advocate a parliamentary form of government; or that he cannot disown the electoral college or the one man-one vote ruling.

46. United States v. Gray, 20 U.S.C.M.A. 63 (1970).

47. In United States v. Priest, 21 U.S.C. M.A. 564, 571 (1972) the Court professed to accept the "clear and present danger" standard, although applying it as "rephrased" into the "balancing" test of Dennis v. United States, 341 U.S. 494, 510, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). The Court examined only what the statements said or "implied" rather than the objective factual context to determine the

actual danger to good order. The Court looked essentially to whether the "motivation" of the troops could be "shattered" by the statements if issue and found that if this was a possibility a finding of direct prejudice to military order and discipline was justified. *Cf.* Lewis, Freedom of Speech, An Examination of the Civilian Test for Constitutionality and Its Application to the Military, 41 Mil. L.Rev. 55 (1968).

48. *Cf.* United States v. Harvey, 19 U.S.C. M.A. 539, 543 (1970): "Conduct reasonably calculated to instill disloyalty or insubordination in a member of the armed forces assuredly connotes conduct to the prejudice of good order and discipline in the armed forces."

it interfered with their duties, or with those of any other military personnel at Fort Ord. While success in promoting "disloyalty" cannot alone be determinative of prejudice to good order, there is no evidence in this record of even a tendency toward the breakdown of order. While it was indicated that Fort Ord is a basic training center, presumably including trainees eventually bound for Vietnam duty, it is unclear what implications were to be drawn from that fact.

 As indicated earlier, mere anti-war thoughts or propaganda cannot be kept from military ears simply on the ground that the soldiers will be less highly motivated because of what they hear. Motivation is too intangible a concept to suffice to meet the directness required for a prejudice to order to override the First Amendment. To proscribe speech by servicemen there must be truly direct and palpable prejudice to good military order and discipline. None was shown here. In light of this, no lengthy determination is necessary as to whether the statement here in question was, in fact, disloyal. Suffice to say that, just as the Court of Military Appeals in *Gray*,[49] this Court is "left with an abiding conviction that it does not constitute a declaration of disloyalty to the United States."

The preparedness of our military forces for our national defense is of utmost importance to this Court. The Supreme Court has spoken well, however, to the clash of values involved in this case:

> Yet, this concept of 'national defense' cannot be deemed an end in itself, justifying any exercise of legislative power designed to promote such a goal. Implicit in the term 'national defense' is the notion of defending those values and ideals which set this nation apart. For almost two centuries, our country has taken singular pride in the democratic ideals enshrined in its Constitution, and the most cherished of those ideals have found expression in the First Amendment. It would indeed be ironic if, in the name of national defense, we would sanction the subversion of one of those liberties . . . which makes the defense of the Nation worthwhile.[50]

Finally, this Court is aware that military law has historically recognized a proscription on disloyal statements as prejudicial to good order and discipline.[51] The Court is not prepared to accept, however, an argument of constitutional validity based upon historical precedent and implied construction of the Constitution by its contemporaries.[52] For a long period in the development of our constitutional law there was substantial doubt that the Bill of Rights applied at all to military personnel.[53] Those doubts have now been resolved, however, Burns v. Wilson, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953),[54] and this Court, therefore, cannot accept the argument that early practice justifies

---

49. United States v. Gray, 20 U.S.C.M.A. 63, 68 (1970).

50. United States v. Robel, 389 U.S. 258, 264, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967).

51. *See* United States v. Harvey, 19 U.S.C. M.A. 539, 542 (1970); Winthrop's Military Law and Precedents, 2d ed., 1920 Reprint, p. 278.

52. *See* United States v. Howe, 17 U.S. C.M.A. 165, 170–176 (1967); United States v. Barnette, 376 U.S. 681, 693, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964); Ex Parte Quirin, 317 U.S. 1, 41, 63 S.Ct. 2, 87 L.Ed. 3 (1942).

53. *See* Dynes v. Hoover, 61 U.S. (20 Hw.) 65, 15 L.Ed. 838 (1858); Carter v. Roberts, 177 U.S. 496, 20 S.Ct. 713, 44 L.Ed. 861 (1900); Reaves v. Ainsworth, 219 U.S. 296, 304, 31 S.Ct. 230, 55 L.Ed. 225 (1911).

54. *Cf.* United States v. Priest, 21 U.S.C. M.A. 564, 569–70 (1972); United States v. Tempia, 16 U.S.C.M.A. 629 (1967); United States v. Jacoby, 11 U.S.C.M.A. 428 (1960); Kauffman v. Sec. of Air Force, note 11, *supra*.

the flaunting of modern and well-de-- fined constitutional standards.

## ORDER AND JUDGMENT

Plaintiffs, having duly moved this Court for summary judgment for all relief demanded in their complaint, and defendants having filed a cross motion for summary judgment; and said motions having duly come on to be heard before this Court upon briefs submitted by both parties; and this Court thereafter, on December 22, 1972, having handed down its Memorandum Opinion on said motions, it is hereby ordered, adjudged and decreed that:

(1) Plaintiffs' motion for summary judgment is granted as hereinafter provided and defendants' motion for summary judgment is denied.

(2) The convictions of plaintiffs pursuant to a general court-martial held at Ft. Ord, California on May 20, 1968 are declared to have been obtained in violation of plaintiffs' constitutional rights as elaborated in this Court's Memorandum Opinion and to be null and void.

(3) Defendants, their subordinates and agents, and persons acting under their authority are directed to make appropriate corrections of plaintiffs' military records to vacate and annul the convictions and sentences pursuant to said court-martial; to make provision for restoration of plaintiffs to the rank and seniority to which they were entitled on May 20, 1968 and to which they would have been entitled thereafter while on active duty had such courts-martial not taken place; and to award plaintiffs honorable discharges.

(4) Defendants, their subordinates and agents, and persons acting under their authority are directed to pay to plaintiffs all back pay and allowances of which they were deprived by virtue of said court-martial convictions and such payments as they are entitled to under law and appropriate military regulations.